Alfred Vischer, Jr., Appellant, v. Dow Jones and Company, Inc., et al., Appellees.

Gen. No. 42,830.

Heard in the second division of this court for the first district at the October term, 1943.

Opinion filed February 13, 1945.  Released for publication March 5, 1945.

WALTER HAMILTON, of Chicago, for appellant.

MILLER, GORHAM, WESCOTT & ADAMS, of Chicago, for appellees; HERBERT C. DE YOUNG and JAMES A. C. KELLY, both of Chicago, of counsel.

MR. JUSTICE SCANLAN delivered the opinion of the court.

Plaintiff filed his complaint in equity against Dow Jones & Company, Inc., a New York corporation; Financial Press Companies of America, a voluntary trust of Massachusetts, and Illinois Telegraph News Company, an Illinois corporation.  Defendant Dow

Jones & Company, Inc., filed a limited and special appearance for the sole purpose of moving to quash the purported service upon it, on the ground that it is not present in the State of Illinois and subject to the jurisdiction of the Superior court. Defendant Financial Press Companies of America filed a like appearance and a like motion, and in its motion it also contended that it is not a legal entity which can be sued. After affidavits had been filed in support of the said motions and against them the trial court sustained both motions. Defendant Illinois Telegraph News Company filed a motion to dismiss the complaint for want of equity. This motion was also allowed. Plaintiff appeals.

For the purposes of this appeal it is sufficient to state that plaintiff, in his complaint, seeks a rescission of an oral contract of employment alleged to have been made between him and Dow Jones & Company, on March 7, 1930; a reconveyance of certain patents granted on certain mechanisms pertaining to news tickers which plaintiff invented while in the employ of Dow Jones & Company and Dow Jones & Company, Inc., and an accounting. The complaint alleges that it was agreed that plaintiff was to head a new department to produce news tickers and that his compensation was to be $10,000 per year, payable monthly; that he was to assign all patent applications for improvements of the news ticker invented by him during the term of his employment to Dow Jones & Company or its designee, and that his employment should continue during the life of the patents obtained. The complaint further alleges that Dow Jones & Company, Inc., was incorporated on November 21, 1930, and assumed the benefits and obligations of the employment contract, and that it continued to pay plaintiff his salary of $10,000 per year until November 15, 1932, when said defendant notified plaintiff that his services were no longer desired, and that they would terminate as of

January 1, 1933. The complaint further alleges that a fiduciary relationship existed between plaintiff and Dow Jones & Company and that that Company and its successor, Dow Jones & Company, Inc., were guilty of fraud which induced the making of the contract because it was the intention of Dow Jones & Company, at the time of the making of the contract, to have plaintiff establish the new department for the manufacture of news tickers and then discharge him. The complaint further alleges that ''The Financial Press Companies of America, owns and controls all or substantially all of the capital stock of all the other defendants;'' and ''it is the parent corporation of all said defendants.''

Plaintiff contends that the trial court erred in sustaining the motion of defendant Dow Jones & Company, Inc., to quash the summons and purported return of service. This contention involves the question as to whether or not Dow Jones & Company, Inc., was doing business within this State in such a degree as to subject it, a New York corporation, to the jurisdiction of our courts. Where the business shown in a given case is, in substance, nothing more than mere solicitation of business it is not sufficient to subject a foreign corporation to the local jurisdiction. *Bull & Co. v. Boston & M. R. R.*, 344 Ill. 11, cited by the instant defendant, is a case in point. One of the cases cited in support of the trial court's ruling is *Green v. Chicago, Burlington & Quincy Ry.*, 205 U. S. 530 (1907). There the plaintiff appealed from a ruling of the United States Circuit Court holding that the defendant was not doing business within the Eastern District of Pennsylvania in such a manner and to such an extent as to warrant the inference that through its agent it was present there. The opinion states the facts as follows (pp. 532, 533):

''The eastern point of the defendant's line of railroad was at Chicago, whence its tracks extended west-

ward. The business for which it was incorporated was the carriage of freight and passengers, and the construction, maintenance and operation of a railroad for that purpose. As incidental and collateral to that business it was proper, and, according to the business methods generally pursued, probably essential, that freight and passenger traffic should be solicited in other parts of the country than those through which the defendant's tracks ran. For the purpose of conducting this incidental business the defendant employed Mr. Heller, hired an office for him in Philadelphia, designated him as district freight and passenger agent, and in many ways advertised to the public these facts. The business of the agent was to solicit and procure passengers and freight to be transported over the defendant's line. For conducting this business several clerks and various travelling passenger and freight agents were employed, who reported to the agent and acted under his direction. He sold no tickets and received no payments for transportation of freight. When a prospective passenger desired a ticket, and applied to the agent for one, the agent took the applicant's money and procured from one of the railroads running west from Philadelphia a ticket for Chicago and a prepaid order, which gave to the applicant, upon his arrival at Chicago, the right to receive from the Chicago, Burlington and Quincy Railroad a ticket over that road. Occasionally he sold to railroad employes, who already had tickets over intermediate lines, orders for reduced rates over the defendant's lines. In some cases, for the convenience of shippers who had received bills of lading from the initial line for goods routed over the defendant's lines, he gave in exchange therefor bills of lading over the defendant's line. In these bills of lading it was recited that they should not be in force until the freight had been actually received by the defendant.''

The Supreme Court held (p. 533) that ''The business shown in this case was in substance nothing more

than that of solicitation,'' and the judgment of the Circuit court was affirmed. But the *Green* case was followed by *International Harvester Co. v. Kentucky,* 234 U. S. 579 (1914), which is probably the leading case upon the question now before us. To quote from the opinion of the court in that case (pp. 582–589):

"It appeared that prior to October 28, 1911, before this indictment was returned, the Harvester Company had been doing business in Kentucky and had designated Louisville, Kentucky, as its principal place of business, in compliance with the statutes of Kentucky in that respect. It further appeared that the Company had revoked the agency of one who had been appointed under the Kentucky statute and had not appointed anyone else upon whom process might be served.

". . . We come then to the first question in this case, which is, Whether under the circumstances shown in this case the Harvester Company was carrying on business in the State of Kentucky in such manner as to justify the courts of that State in taking jurisdiction of complaints against it.

"For some purposes a corporation is deemed to be a resident of the State of its creation, but when a corporation of one State goes into another in order to be regarded as within the latter it must be there by its agents authorized to transact its business in that State. The mere presence of an agent upon personal affairs does not carry the corporation into the Foreign state. It has been frequently held by this court, and it can no longer be doubted that it is essential to the rendition of a personal judgment that the corporation be 'doing business' within the State. *St. Louis S. W. Ry. v. Alexander,* 227 U. S. 218, 226, and cases there cited. As was said in that case, *each case must depend upon its own facts,* and their consideration must show that this essential requirement of jurisdiction has been complied with and that the corporation is actually doing business within the State.

"In the case now under consideration the Court of Appeals of Kentucky found, with warrant for the conclusion, that the Harvester Company's method of conducting business might be shown to the best advantage from the general instruction of the company to its agents of date November 7, 1911, as follows:

" 'The Company's transactions hereafter with the people of Kentucky must be on a strictly interstate commerce basis. Travelers negotiating sales must not hereafter have any headquarters or place of business in that State, but may reside there.

" 'Their authority must be limited to taking orders, and all orders must be taken subject to the approval of the general agent outside of the State, and all goods must be shipped from outside of the State after the orders have been approved. Travelers do not have authority to make a contract of any kind in the State of Kentucky. They merely take orders to be submitted to the general agent. If any one in Kentucky owes the Company a debt, they may receive the money, or a check, or a draft for the same but they do not have any authority to make any allowance or compromise any disputed claims. When a matter cannot be settled by payment of the amount due, the matter must be submitted to the general or collection agent, as the case may be, for adjustment, and he can give the order as to what allowance or what compromise may be accepted. All contracts of sale must be made f. o. b. from some point outside of Kentucky and the goods become the property of the purchaser when they are delivered to the carrier outside of the State. Notes for the purchase price may be taken and they may be made payable at any bank in Kentucky. All contracts of any and every kind made with the people of Kentucky must be made outside of that State, and they will be contracts governed by the laws of the various States in which we have general agencies handling interstate business with the people of Kentucky.

For example, contracts made by the general agent at Parkersburg, W. Va., will be West Virginia contracts.

" 'If any one of the Company's general agents deviates from what is stated in this letter, the result will be just the same as if all of them had done so. Anything that is done that places the Company in the position where it can be held as having done business in Kentucky, will not only make the man transacting the business liable to a fine of from one hundred to one thousand dollars for each offense, but it will make the Company liable for doing business in the State without complying with the requirements of the laws of the State. We will, therefore, depend upon you to see that these instructions are strictly carried out.'

"Taking this as the method of carrying on the affairs of the Harvester Company in Kentucky, does it show a doing of business within that State to the extent which will authorize the service of process upon its agents thus engaged?

"Upon this question the case is a close one, but upon the whole we agree with the conclusion reached by the Court of Appeals, that the Harvester Company was engaged in carrying on business in Kentucky. We place no stress upon the fact that the Harvester Company had previously been engaged in doing business in Kentucky and had withdrawn from that State for reasons of its own. Its motives cannot affect the legal questions here involved. In order to hold it responsible under the process of the state court it must appear that it was carrying on business within the State at the time of the attempted service. As we have said, we think it was. Here was a continuous course of business in the solicitation of orders which were sent to another State and in response to which the machines of the Harvester Company were delivered within the State of Kentucky. This was a course of business, not a single transaction. The agents not only solicited such orders in Kentucky, but might

there receive payment in money, checks or drafts. They might take notes of customers, which notes were made payable, and doubtless were collected, at any bank in Kentucky. This course of conduct of authorized agents within the State in our judgment constituted a doing of business there in such wise that the Harvester Company might be fairly said to have been there, doing business, and amenable to the process of the courts of the State.

"It is argued that this conclusion is in direct conflict with the case of *Green v. Chicago, Burlington & Quincy Ry.*, 205 U. S. 530. We have no desire to depart from that decision, *which, however, was an extreme case.* There the Railway Company, carrying on no business in Pennsylvania, other than that hereinafter mentioned, and having its organization and tracks in another State, was sought to be held liable in the Circuit Court of the United States for the Eastern District of Pennsylvania by service upon one Heller, who was described as an agent of the corporation. As incidental and collateral to its business proper the Company solicited freight and passenger traffic in other parts of the country than those through which its tracks ran. For that purpose it employed Heller, who had an office in Philadelphia, where he was known as district freight and passenger agent, to procure passengers and freight to be transported over the Company's line. He had clerks and travelling passenger and freight agents who reported to him. He sold no tickets and received no payment for the transportation of freight, but took the money of those desiring to purchase tickets and procured from one of the railroads running west from Philadelphia a ticket for Chicago and a prepaid order which gave the holder the right to receive from the Company in Chicago a ticket over its road. Occasionally he sold to railroad employes, who already had tickets over intermediate lines, orders for reduced rates over the

Company's line. In some cases for the convenience of shippers who had received bills of lading from the initial line for goods routed over the Company's line, he exchanged bills of lading over its line, which were not in force until the freight had been actually received by the Company. Summarizing these facts, Mr. Justice MOODY, speaking for the court, said (p. 533): 'The business shown in this case was in substance nothing more than that of solicitation. Without undertaking to formulate any general rule defining what transactions will constitute "doing business" in the sense that liability to service is incurred, we think that this is not enough to bring the defendant within the district so that process can be served upon it.'

"In the case now under consideration there was something more than mere solicitation. In response to the orders received, there was a continuous course of shipment of machines into Kentucky. There was authority to receive payment in money, check or draft, and to take notes payable at banks in Kentucky.

"It is further contended that as enforced by the decision of the Kentucky court the law, in its relation to interstate commerce, operates to burden that commerce. It is argued that a corporation engaged in purely interstate commerce within a State cannot be required to submit to regulations such as designating an agent upon whom process may be served as a condition of doing such business, and that as such requirement cannot be made the ordinary agents of the corporation, although doing interstate business within the State, cannot by its laws be made amenable to judicial process within the State. The contention comes to this, so long as a foreign corporation engages in interstate commerce only it is immune from the service of process under the laws of the State in which it is carrying on such business. This is indeed, as was said by the Court of Appeals of Kentucky, a novel

proposition, and we are unable to find a decision to support it, nor has one been called to our attention.

"...

"*We are satisfied that the presence of a corporation within a State necessary to the service of process is shown when it appears that the corporation is there carrying on business in such sense as to manifest its presence within the State,* although the business transacted may be entirely interstate in its character. In other words, this fact alone does not render the corporation immune from the ordinary process of the courts of the State.

"It follows that the judgment of the Court of Appeals of Kentucky must be Affirmed." (Italics ours.)

*Tauza v. Susquehanna Coal Co.,* 220 N. Y. 259, followed the ruling in the *International Harvester Co.* case. The opinion in the *Tauza* case was written by Judge CARDOZO. To quote from the opinion (pp. 265–268):

"... The defendant's principal office is in Philadelphia; but it has a branch office in New York, which is in charge of one Peterson. Peterson's duties are described by the defendant as those of a sales agent. He has eight salesmen under him, who are subject to his orders. A suite of offices is maintained in the Equitable Building in the city of New York, and there the sales agent and his subordinates make their headquarters. The sign on the door is 'Susquehanna Coal Company, Walter Peterson, sales agent.' The offices contain eleven desks and other suitable equipment. In addition to the salesmen there are other employees, presumably stenographers and clerks. The salesmen meet daily and receive instructions from their superior. All sales in New York are subject, however, to confirmation by the home office in Philadelphia. The duty of Peterson and his subordinates is to procure orders which are not binding until approved. All payments are made by customers to the

treasurer in Philadelphia; the salesmen are without authority to receive or indorse checks. A bank account in the name of the company is kept in New York, and is subject to Peterson's control, but the payments made from it are for the salaries of employees, and for petty cash disbursements incidental to the maintenance of the office. The defendant's coal yards are in Pennsylvania, and from there its shipments are made. They are made in response to orders transmitted from customers in New York. They are made, not on isolated occasions, but as part of an established course of business. In brief, the defendant maintains an office in this state under the direction of a sales agent, with eight salesmen, and with clerical assistants, and through these agencies systematically and regularly solicits and obtains orders which result in continuous shipments from Pennsylvania to New York.

''To do these things is to do business within this state in such a sense and in such a degree as to subject the corporation doing them to the jurisdiction of our courts. The decision of the Supreme Court in *International Harvester Co. v. Kentucky* (234 U. S. 579) is precisely applicable. There sales agents in Kentucky solicited orders subject to approval of a general agent in the home state. They did this, not casually and occasionally, but systematically and regularly. Unlike the defendant's salesmen, they did not have an office to give to their activities a fixed and local habitation. The finding was that travelers negotiating sales were not to have any headquarters or place of business in that state, though they were permitted to reside there (234 U. S. at p. 584). Yet because their activities were systematic and regular, the corporation was held to have been brought within Kentucky, and, therefore, to be subject to the process of the Kentucky courts. 'Here,' said the court (p. 585), 'was a continuous course of business in the solicitation of

orders which were sent to another State and in response to which the machines of the Harvester Company were delivered within the State of Kentucky. This was a course of business, not a single transaction.' That case goes farther than we need to go to sustain the service here. It distinguishes *Green v. Chicago, B. & Q. Ry. Co.* (205 U. S. 530) where an agent in Pennsylvania solicited orders for railroad tickets which were sold, delivered and used in Illinois. The orders did not result in a continuous course of shipments from Illinois to Pennsylvania. The activities of the ticket agent in Pennsylvania brought nothing into that state. In the case at bar, as in the *International Harvester* case, there has been a steady course of shipments from one state into the other. The business done in New York may be interstate business, but business it surely is.

"The defendant refers to cases in which corporations, whose situation was not unlike the defendant's, have been held not to be doing business in this state within the meaning of section 15 of the General Corporation Law and kindred statutes (*People ex rel. Tower Co. v. Wells,* 98 App. Div. 82; 182 N. Y. 553; *Hovey v. De Long H. & E. Co.,* 211 N. Y. 420; *Cummer Lumber Co. v. Assoc. Mfrs. M. F. Ins. Corp.,* 67 App. Div. 151; 173 N. Y. 633; *Penn Collieries Co. v. McKeever,* 183 N. Y. 98). But activities insufficient to make out the transaction of business, within the meaning of those statutes, may yet be sufficient to bring the corporation within the state so as to render it amenable to process (*Int. Text Book Co. v. Tone,* decided herewith [220 N. Y. 313]). In construing statutes which license foreign corporations to do business within our borders we are to avoid unlawful interference by the state with interstate commerce. The question in such cases is not merely whether the corporation is here, but whether its activities are so related to interstate commerce that it may, by a denial

of a license, be prevented from being here (*International Text Book Co. v. Pigg*, 217 U. S. 91). 'A statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional but also grave doubts upon that score' (*U. S. v. Jin Fuey Moy*, 241 U. S. 394, 401; *Hovey v. De Long H. & E. Co., supra*, at p. 429). But the problem which now faces us is a different one. It is not a problem of statutory construction. It is one of jurisdiction, of private international law (Dicey Conflict of Laws, pp. 38, 155). We are to say, not whether the business is such that the corporation may be prevented from being here, but whether its business is such that it *is* here. If in fact it is here, if it is here, not occasionally or casually, but with a fair measure of permanence and continuity, then, whether its business is interstate or local, it is within the jurisdiction of our courts (*International Harvester Co. v. Kentucky, supra*, at p. 587). To hold that a state cannot burden interstate commerce, or pass laws which regulate it, 'is a long way from holding that the ordinary process of the courts may not reach corporations carrying on business within the state which is wholly of an interstate commerce character' (234 U. S. at p. 588). The nature and extent of business contemplated by licensing statutes is one thing. The nature and extent of business requisite to satisfy the rules of private international law may be quite another thing. In saying this we concede the binding force of the decision of the Supreme Court in *Riverside & Dan River Cotton Mills v. Menefee* (237 U. S. 189) and kindred cases (*Bagdon v. Philadelphia & Reading C. & I. Co.*, 217 N. Y. 432, 438; *Pomeroy v. Hocking Valley Ry. Co.*, 218 N. Y. 530). Unless a foreign corporation is engaged in business within the state, it is not brought within the state by the presence of its agents. *But there is no precise test of the nature or extent of the business that must be done. All that is requisite is that enough be done to*

*enable us to say that the corporation is here (St. Louis
S. W. Ry. Co. of Texas v. Alexander, 227 U. S. 218;
Washington-Virginia Ry. Co. v. Real Estate Trust Co.
of Phila., 238 U. S. 185; Int. Harvester Co. v. Ky.,
supra; Pomeroy v. Hocking Valley Ry. Co., supra).
If it is here it may be served* (Halsbury, L. C., in *La
Compagnie Generale Transatlantique v. Law,* L. R.
[1899 A. C.] 431).

"We hold, then, that the defendant corporation is
engaged in business within the state. We hold further
that the jurisdiction does not fail because the cause of
action sued upon has no relation in its origin to the
business here transacted. That in principle was our
ruling in *Bagdon v. Phila. & Reading C. & I. Co.* (217
N. Y. 432, 438)." (Italics ours.)

The following are the pertinent facts that bear
upon the question before us: Dow Jones & Company,
Inc., is a New York corporation and a leader in its
field of business. Its secretary and treasurer filed an
affidavit in support of its motion which states that no
officer or shareholder of the corporation resides in
Illinois; that the corporation has never qualified to do
business in this State and has never consented to be
sued in this State; that it is not doing business in Illi-
nois; that its employees in Illinois are engaged solely
in soliciting advertisers and subscribers for a paper
published by the corporation in New York, in gather-
ing and transmitting news to the said corporation in
said place and in delivering papers published in New
York by the corporation to subscribers in Illinois;
that W. P. Black is not authorized to enter into con-
tracts on behalf of the corporation except subject to
the approval of the president of the corporation in
New York City. It appears, however, that the corpo-
ration maintains offices in fifteen of the largest cities
in the world, including London and Paris; that its
electrically operated tickers are in 160 cities of the
United States, including Chicago; that it owns The

Wall Street Journal, a financial paper with a wide circulation among financial houses in Chicago and elsewhere; that the said Journal is published in New York City; that Dow Jones & Company, Inc., has two offices in the Board of Trade building, Chicago, and on the door of each office appear the words, "The Wall Street Journal" and "Dow Jones News Service;" that in the Chicago telephone directory there appears the following: "Wall St. Journal News Dept. 141 W. Jackson HAR-isn 4100;" that it maintains in Chicago what is known as the "City Desk," operated by W. P. Black, "an employee of judgment and discretion;" that when important financial news "breaks" in Chicago, Illinois, an employee of said defendant in Chicago "gathers" it and immediately telephones it to Black; that the latter thereupon "exercises judgment and discretion and determines whether the said news is properly authenticated;" that he had a stenographer, employed by said defendant, type the news and it was then sent by teletype owned by said defendant over a private wire to the New York office, where it is put through a transmitter to electrically operated news tickers to defendant's customers in New York City and also to the Wall Street Journal for publication; that Black also furnishes the news, "gathered" by the instant defendant's employees in Chicago, to defendant Illinois Telegraph News Company, which transmits it to brokerage houses. The instant defendant concedes that in some instances certain of its employees in Illinois, known as news gatherers, may convey the news to defendant Illinois Telegraph News Company by word of mouth or memoranda. It leases to defendant Financial Telegraph News Company two transmitting plants located in the Board of Trade building, Chicago, one for high speed tickers and one for low speed tickers for grain and produce firms; that the local employees of the instant defendant solicit news items, subscriptions

and advertisements in Chicago for the Wall Street Journal and they personally deliver that paper to its customers in Chicago, including news stands. It leases to the defendant Illinois Telegraph News Company in Chicago 200 of the Vischer high speed tickers and the latter Company leases them to brokerage houses in Chicago. It keeps in reserve in Chicago twenty-five high speed tickers, to be used when the leased tickers need repair, and in such event it furnishes, through its Chicago employees, repair parts and repair service for these machines. It also leases to Illinois Telegraph News Company in Chicago 150 slow tickers for grain and produce houses, and it keeps tickers in reserve for emergencies, when it, through its Chicago employees, furnishes repair services for the said tickers. None of the tickers are manufactured in Chicago, or Illinois.

We hold that defendant Dow Jones & Company, Inc., was doing business within this State in such a sense and in such a degree as to subject that corporation to the jurisdiction of our courts, and that the trial court erred in sustaining the motion of the instant defendant to quash the summons and the return of service of the summons upon the instant defendant. The instant defendant argues that if we hold that the trial court erred in sustaining its motion, nevertheless, we should affirm the trial court's order in question if we should conclude that the complaint fails to state a cause of action against Dow Jones & Company, Inc., and it contends that the complaint fails to state a cause of action against that Company. It is sufficient to state, in answer to this argument, that the merits of the complaint, so far as Dow Jones & Company, Inc., is concerned, is not before us upon this appeal.

Plaintiff contends that the trial court erred in sustaining the motion of defendant Financial Press Companies of America. That defendant contended in the trial court and contends here that "The Financial Press Companies of America is not a legal entity."

There is no merit in this contention. The instant defendant was created under Chapter 182, Annotated Laws of Mass., Vol. 6, p. 72, and while it is not a corporation nor an association, it is a separate legal entity for the purpose of being sued. (See *Peterson v. Hopson,* 306 Mass. 597, 612; *Griswold v. United States,* 36 F. Supp. 714, 719.) Section 6 of the Massachusetts Act provides that such an association or trust may be sued in an action at law and its property shall be subject to attachment and execution in like manner as if it were a corporation and that service of process upon one of the trustees shall be sufficient. The instant defendant further contends that Section 6 authorizes only suits at law and that the instant suit is brought in equity. This is a far-fetched contention, as the words "action at law" are comprehensive enough to include an action in equity. *Peterson v. Hopson, supra,* involved a bill in equity. Defendant further contends that "the question, however, is not whether The Financial Press Companies of America could be sued under the laws of Massachusetts, but whether it can be sued under the laws of Illinois," and it cites *Schumann-Heink v. Folson,* 328 Ill. 321, in support of its contention that the instant defendant could not be sued in Illinois because, defendant argues, under the ruling in the above case "a trust is no entity at all." While it is true that the court, in its opinion, used the language just quoted, nevertheless, the question now before us was not raised nor decided in that case. There Schumann-Heink was induced to invest in a trust that was created under the Massachusetts Act. She did not sue the trust in its trust name, but sued the defendants individually as partners and also as trustees of the trust. The trial court gave her a judgment against the defendant Mackie, individually, for $10,000, and against Mackie and Folsom, as trustees of the trust, for $10,000. She sued out a writ of error because the trial court dismissed her bill as to Folsom individually

and as a partner. The Supreme Court affirmed the action of the trial court. The attention of that court was not called to Chapter 186, Section 6, of the Massachusetts Annotated Statutes. In Illinois we have no statute similar to the Massachusetts statute, and the language in question used by the Supreme Court would apply to a trust created in Illinois. Several other cases cited by defendants in support of this last contention may be distinguished from the instant proceeding.

The next contention of the instant defendant is a meritorious one. The return of the sheriff shows that the instant defendant was served as a corporation by leaving a copy of the summons with "W. P. Black, an agent of said corporation." It appears that none of the trustees of the Financial Press Companies of America is a resident of this State; that the said trustees do not have any agents in this State and they do no business here; that Black is not paid by said trustees nor by anyone for or on their behalf, and that he is not authorized to act for them in any respect. The instant defendant contends that as it is not an incorporated company the purported summons served upon "W. P. Black, an agent of said corporation," is without any force and effect; that the only provision in the Massachusetts statutes as to service provides that "service of process upon one of the trustees shall be sufficient." Plaintiff argues that the service was good because the instant defendant owned all of the stock of defendant Illinois Telegraph News Company and received all of its net income; that the Telegraph Company "is the *alter ego*" of the Financial Press Companies of America and that "for the purposes of service of summons they are the same corporation," and therefore service upon the Illinois Telegraph News Company was good service on the Financial Press Companies of America. We cannot agree with this

argument of plaintiff. *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U. S. 333, is an authority against it. We think that the Massachusetts Act in providing that the association or trust created under the Act might be sued in an action at law also provided the method in which service of process might be had. We have reached the conclusion that the instant contention of The Financial Press Companies of America is sound, and that the action of the trial court in quashing the summons and the return of service as to that defendant must be affirmed. While it is questionable if plaintiff can obtain good service upon the instant defendant in Illinois, it is not necessary for us to pass upon that question.

Plaintiff contends that the trial court erred in sustaining the motion of Illinois Telegraph News Company to strike the complaint and dismiss the suit as to that defendant for want of equity. After a patient consideration of the strained argument of plaintiff in support of this contention we are satisfied that the action of the trial court in sustaining the motion of the Illinois Telegraph News Company was fully justified.

The order of the Superior court of Cook county of April 15, 1943, quashing the summons against Dow Jones & Company, Inc., is reversed and the cause is remanded as to that defendant with directions to the trial court to overrule the motion of said defendant to quash the summons and to dismiss the suit against it, and for further proceedings not inconsistent with this opinion. The further order of the said court, of the same date, quashing the summons and purported return of service upon defendant The Financial Press Companies of America is sustained. The further order of the said court, of the same date, dismissing the complaint as to the defendant Illinois Telegraph News Company, an Illinois corporation, for want of equity is sustained.

*Order dated April 15, 1943, as to defendant Dow Jones & Company, Inc., reversed and cause remanded with directions. Order dated April 15, 1943, as to defendant The Financial Press Companies of America, sustained. Order dated April 15, 1943, as to defendant Illinois Telegraph News Company, an Illinois corporation, sustained.*

SULLIVAN, P. J., and FRIEND, J., concur.