LUIS KUTNER, Plaintiff-Appellant, *v.* PHILIP DeMASSA, Defendant-Appellee.

First District (3rd Division)    No. 80-450

Opinion filed May 6, 1981.

Jeffrey Schulman, of Chicago, for appellant.

Baker & McKenzie, of Chicago (Francis D. Morrissey, Edward J. Zulkey, and Daniel J. O'Connor, of counsel), for appellee.

Mr. JUSTICE WHITE delivered the opinion of the court:

Luis Kutner, plaintiff-appellant, appeals from the order of the circuit court of Cook County quashing service of summons and dismissing his

second amended complaint. Plaintiff's original complaint for defamation, invasion of privacy and infliction of emotional distress was filed October 18, 1976. Defendant Philip DeMassa appeared specially and moved to quash service for lack of jurisdiction *in personam*. The circuit court granted the motion, allowing plaintiff leave to amend. On July 6, 1978, plaintiff filed an amended complaint. Defendant renewed his motion to quash and attached in support, his affidavit denying jurisdictional contacts with Illinois. Plaintiff filed his counteraffidavit attached to a memorandum in opposition to defendant's motion. The service of summons was quashed, and plaintiff was granted leave to amend a second time. Upon the filing of the second amended complaint, defendant again moved to quash for lack of jurisdiction *in personam* incorporating by reference his earlier affidavit. It is from the order granting this motion that plaintiff appeals.

This is the full text of the affidavit defendant filed in support of his motion:

"I, PHILIP A. DeMASSA, declare that I am a resident of San Diego County, California, and have resided continuously in San Diego since 1952 when I was 7 years old. I am a member of the California Bar and was admitted to the practice of law in 1971.

With the exception of attending the Democratic National Convention in Chicago in 1968, I have never been in the State of Illinois nor have I had any personal, business or professional contacts with the State of Illinois except as stated in this Declaration.

I made a single telephone call from San Diego to MR. LUIS KUTNER, in Chicago, with regard to an action pending in the San Diego Superior Court.

I have had no additional contact with the State of Illinois.

I have read the Amended Complaint on file in this action. In particular, I have read the allegations stated in the 17th paragraph of Count I. These allegations which state that a man named VODRE NUNNALLY and a companion performed certain acts including the threatening and attempted extortion of LUIS KUTNER in Illinois as my agent and employee are false, as are the remaining allegations stated in the Amended Complaint which pertain to me.

VODRE NUNNALLY has never been authorized to act as my agent or employee in any capacity. We have never engaged in any common business or social venture and I have no knowledge relative to the identity of the individual referred to in the Complaint as 'a Mexican male person'.

I declare under penalty of perjury that the foregoing is true and correct and that the facts stated in this declaration are matters

which are within my personal knowledge and to which I could competently testify in a Court of law."

In response plaintiff filed his "Opposition to Motion to Quash Purported Service of Summons on Second Amended Complaint" which in part states:

"The Second Amended Complaint in this action alleges a tort committed in Illinois by agents of the Defendant, PHILIP DeMASSA, sent to Illinois from California by PHILIP DeMASSA and others, for the purpose of committing a tort against the Plaintiff. * * *"

Plaintiff also filed a counteraffidavit stating:

"1. I am the Plaintiff in the above-captioned action.

2. I have read the Amended Complaint and the facts and allegations contained therein are true and correct to the best of my information, knowledge and belief.

3. I have read the affidavit filed by Philip A. DeMassa in support of his Motion to Quash Service of Summons upon him.

4. The statement in Mr. DeMassa's affidavit that his single telephone conversation with me was in regard to an action pending in San Diego Superior Court is false. At the time of Mr. DeMassa's telephone conversation to me, I had no connection with any matter pending in the San Diego Superior Court. Thus, the conversation described in Paragraph 17 of the Amended Complaint was for the purposes stated therein, and not to discuss any court action."

The contradiction between the parties' affidavits regarding their telephone conversation is of no importance to the issue here since plaintiff does not rely upon that call as the basis for Illinois jurisdiction. Plaintiff's claim of Illinois *in personam* jurisdiction is based on allegations in the second amended complaint that certain named persons were agents of defendant DeMassa, that he sent them from California to Illinois for the purpose of committing a tort against plaintiff, and that these agents of DeMassa came to Chicago where they threatened and attempted to extort money from plaintiff pursuant to orders from DeMassa and two co-defendants, Jean and Gustavo Guerra.

The second amended complaint also contained these interesting background allegations. Plaintiff Kutner is a resident and citizen of Chicago, Illinois, and an attorney; defendant DeMassa is a resident of San Diego, California, and an attorney; defendant Vodre Nunnally was the agent, employee and representative of defendants DeMassa and Jean Guerra. Other defendants, whose real names are not known to plaintiff, have acted as agents of defendants DeMassa and Guerra. Plaintiff alleged further that Jean Guerra retained plaintiff to represent her son, Robert

Page, and requested him to perform a variety of services. It is alleged that Jean Guerra later made a long-distance telephone call to plaintiff in Chicago and requested his legal assistance in arranging for local counsel for a number of "friends" who had been taken into custody in San Diego, for alleged narcotics violations. Plaintiff arranged local legal representation, and travelled to San Diego, where persons accompanying Jean Guerra turned over to plaintiff a sum of money which was to be used as a fund for legal counsel and for plaintiff's retention. Additional sums of money were given to plaintiff by Jean Guerra's friends, and plaintiff, Jean Guerra and Gustavo Guerra agreed that plaintiff's fee for legal services and advice rendered would be $500,000. On June 2, 1972, plaintiff was advised that the "bail fund" (apparently the moneys turned over to plaintiff referred to above) put together by the "Guerra friends" was "hot bread." The second amended complaint alleges further that on the same date, plaintiff insisted that he be relieved of the bail fund, and that he made arrangements with Gustavo Guerra for the money to be turned over to a person named "Ray" or "Ron" so that the funds could be secreted from Jean Guerra. On June 5, 1972, plaintiff made a total and absolute divesting of the fund pursuant to Gustavo Guerra's instructions and received a receipt signed "Ron Thorpe." This divesting was communicated to Jean Guerra and various friends of the Guerras, and it is alleged defendants Gustavo and Jean Guerra have converted the bail fund to their own use. It is alleged that nevertheless, agents of DeMassa and the Guerras came to Chicago where they threatened defendant with violence and demanded an extortion sum of $200,000. The complaint also alleges that defendant DeMassa and co-conspirators caused to be published in Illinois false statements that plaintiff had misappropriated funds. These allegations were set forth in the second amended complaint in some detail but nowhere did the complaint state where, when, how or why the agency relationship was established between DeMassa and the alleged agents. Nor was it stated where, when, how or by whom the orders to threaten and extort were issued.

Section 17(1)(b) of the Illinois Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 17) provides:

"(1) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, * * * to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:

* * *

(b) The commission of a tortious act within this State; * * *."

Plaintiff does not contend that defendant personally committed any tortious acts in Illinois, but he does contend that defendant through agents

committed such acts. It is charged the acts were done pursuant to his direction and pursuant to a conspiracy of which he was a member. Plaintiff contends that this conspiracy was "hatched in California but carried out by members in Illinois where the plaintiff resides and where its effects would be naturally felt." Defendant does not argue that the conduct alleged in the second amended complaint does not amount to the commission of a tortious act in Illinois, but he does deny involvement in the acts alleged.

■■ Our supreme court has interpreted sections 16 and 17 of the Civil Practice Act as reflecting "a conscious purpose to assert jurisdiction over nonresident defendants to the extent permitted by the due-process clause." (*Nelson v. Miller* (1957), 11 Ill. 2d 378, 389, 143 N.E.2d 673, 679.) That clause "requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " (*International Shoe Co. v. Washington* (1945), 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154.) This requirement that "minimum contacts" exist between a defendant and a forum State in order for a State court to exercise personal jurisdiction over a nonresident defendant was reaffirmed recently in *World-Wide Volkswagen Corp. v. Woodson* (1980), 444 U.S. 286, 291, 62 L. Ed. 2d 490, 100 S. Ct. 559. Personal jurisdiction over a defendant may be based upon a single act or transaction which is the subject matter of the lawsuit, if that act or transaction itself has a substantial connection with the forum State. *Gray v. American Radiator & Standard Sanitary Corp.* (1961), 22 Ill. 2d 432, 438-39, 176 N.E.2d 761, 764-65.

■■ The burden of establishing personal jurisdiction rests with the party asserting the existence of jurisdiction. (*Mergenthaler Linotype Co. v. Leonard Storch Enterprises, Inc.* (1978), 66 Ill. App. 3d 789, 797, 383 N.E.2d 1379, 1385; *Burwood Products Co. v. Marsel Mirror & Glass Products, Inc.* (N.D. Ill. 1979), 468 F. Supp. 1215, 1217; *Wessel Co. v. Yoffee & Beitman Management Corp.* (N.D. Ill. 1978), 457 F. Supp. 939, 940.) The essential inquiry on this appeal is whether plaintiff has met his burden of establishing that defendant submitted himself to the jurisdiction of the courts of Illinois.

■■ A party asserting jurisdiction meets its burden by making a *prima facie* showing that jurisdiction is conferred by the long-arm statute. (*Wessel*, 457 F. Supp. 939, 940; *Cohan v. Municipal Leasing Systems, Inc.* (N.D. Ill. 1974), 379 F. Supp. 1022, 1027.) In considering a challenge to its personal jurisdiction, a court may receive and weigh affidavits, and such conflicts as do exist in the affidavits and pleadings must be resolved in plaintiff's favor for purposes of determining whether a *prima facie* case

for *in personam* jurisdiction has been established. (*Wessel*, 457 F. Supp. 939, 940; *Met-L-Wood Corp. v. Lifetime Pools, Inc.* (N.D. Ill. 1979), 475 F. Supp. 149, 151.) However, where well-alleged facts within an affidavit are not contradicted by counteraffidavit, they must be taken as true notwithstanding the existence of contrary averments in the adverse party's pleadings. (*Central Clearing, Inc. v. Omega Industries, Inc.* (1976), 42 Ill. App. 3d 1025, 1028, 356 N.E.2d 852, 855.) If a defendant's affidavit contesting jurisdiction is not refuted by a counteraffidavit filed by the plaintiff, the facts alleged in the defendant's affidavit are accepted as true. *Doolin v. K-S Telegage Co.* (1979), 75 Ill. App. 3d 25, 29, 393 N.E.2d 556, 559; *Wiedemann v. Cunard Line Ltd.* (1978), 63 Ill. App. 3d 1023, 1031, 380 N.E.2d 932, 938.

■■ Defendant's affidavit specifically denied that Nunnally and another unnamed man were his agents when and if they performed the acts alleged in paragraph 17 of plaintiff's amended complaint. Defendant also specifically denied any involvement in a conspiracy to defame plaintiff. Plaintiff's counteraffidavit attempts to contradict defendant's affidavit by stating that the allegations contained in the amended complaint are true and correct to the best of plaintiff's information, knowledge and belief. This counteraffidavit does not allege any facts (1) to support the conclusion of the existence of an agency or employment relationship between defendant and Nunnally or Nunnally's companion, or (2) to support the conclusion that defendant agreed, schemed, or conspired to defame plaintiff and to invade his privacy. Whereas the plaintiff's complaint alleges the existence of an agency relationship and a conspiracy in conclusory terms, it fails to allege the evidentiary facts upon which the conclusion of agency or conspiracy is based. The defendant's affidavit in contrast specifically denies his involvement in any agency or conspiracy. The plaintiff's counteraffidavit sets forth no facts to support his conclusions of agency and conspiracy. We conclude therefore that plaintiff has failed to meet his burden of making a *prima facie* showing that personal jurisdiction exists.

We note the similarity between the instant case and *Continental Nut Co. v. Robert L. Berner Co.* (7th Cir. 1965), 345 F.2d 395. In that case, plaintiff alleged that an Ohio corporation and its officers committed a tort in Illinois and were, therefore, subjected to the court's jurisdiction. The tort alleged was conspiracy with an Illinois corporation in publishing certain libelous remarks. The Ohio defendants filed uncontroverted affidavits denying correspondence or conversation with the other defendants prior to the publication, and the plaintiff did not challenge these affidavits, but relied upon its unsupported allegation of conspiracy. The court held: "Such an allegation when denied by uncontroverted affidavits is not sufficient in itself to establish the jurisdictional prerequisite of the

state statute." (345 F.2d 395, 398.) Here plaintiff attempted to controvert defendant's affidavit with his own counteraffidavit. However, plaintiff's counteraffidavit was not sufficient. It did not set forth with particularity facts inconsistent with defendant's affidavit, but merely reaffirmed the conclusory allegations of plaintiff's amended complaint on information, knowledge and belief.

Supreme Court Rule 191(a) (Ill. Rev. Stat. 1979, ch. 110A, par. 191(a)) provides:

> "(a) Requirements. Affidavits * * * submitted in connection with a special appearance to contest jurisdiction over the person, as provided by section 20(2) of the Civil Practice Act, shall be made on the personal knowledge of the affiants; shall set forth with particularity the facts upon which the claim, counterclaim, or defense is based; shall have attached thereto sworn or certified copies of all papers upon which the affiant relies; shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto. * * *"

Plaintiff's affidavit does not comply with this rule. It was not based on the personal knowledge of the affiant. Furthermore, it does not affirmatively show that plaintiff, if sworn as a witness, could competently testify to facts alleged in the affidavit. We conclude that plaintiff's second amended complaint and affidavit were not sufficient to satisfy his burden of establishing that personal jurisdiction existed over defendant under the circumstances of this case.

For the reasons stated above, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

RIZZI, P. J., and McNAMARA, J., concur.