THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
PARSONS COMPANY *et al.*, Defendants-Appellees.

Second District   No. 83—121

Opinion filed March 19, 1984.

Neil F. Hartigan, Attorney General, of Springfield (Barbara A. Chasnoff, Assistant Attorney General, of counsel), for the People.

Lord, Bissell & Brook, of Chicago, for appellees.

JUSTICE HOPF delivered the opinion of the court:

The State as plaintiff brings this interlocutory appeal, pursuant to Supreme Court Rule 304(a) (87 Ill. 2d R. 304(a)), from an order of the trial court granting the motion of defendant, Dickey-Grabler Company (Dickey-Grabler), to quash service of summons on it and to dismiss the complaint against it for want of *in personam* jurisdiction.

On appeal, the State contends that, under section 2—209 of the Code of Civil Procedure (Ill. Rev. Stat., 1982 Supp., ch. 110, par. 2—209), the Illinois courts have personal jurisdiction over Dickey-Grabler, an out-of-state corporation, in an action for violations of the Environmental Protection Act (Ill. Rev. Stat. 1981, ch. 111½, par. 1001 *et seq.*), by reason of Dickey-Grabler's control over its Illinois subsidiary, Parsons Company, which was also made a defendant in this action. The State also maintains that personal jurisdiction exists under the due-process clause because Dickey-Grabler had "minimum contacts" with Illinois. Accordingly, the State asserts that the trial court erred in dismissing plaintiff's complaint for want of personal jurisdiction over Dickey-Grabler.

On September 1, 1982, the State filed a three-count complaint against Parsons Company (Parsons) and Dickey-Grabler in which it alleged that the defendants had violated (1) sections 12(d) and 21(f)(2) of the Environmental Protection Act (Ill. Rev. Stat. 1981, ch. 111½, pars. 1012(d), 1021(f)(2)), and (2) various rules and regulations of the Illinois Pollution Control Board concerning the storage and disposal of

hazardous wastes and that the presence of the wastes constituted a public nuisance. In particular, the complaint alleged, among other things, that Dickey-Grabler was the parent corporation of Parsons and that all of the actions cited in the complaint which Parsons conducted were controlled by Dickey-Grabler. The State also filed a motion for a preliminary injunction. Dickey-Grabler was served with the summons and complaint in Ohio.

On August 27, 1982, Parsons filed a voluntary petition for bankruptcy. On September 15, 1982, Dickey-Grabler entered a special and limited appearance for the sole purpose of objecting to the jurisdiction of the court over its person, pursuant to section 2—301 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—301). Subsequently, on October 8 of the same year, Dickey-Grabler filed a motion to quash service of summons on it and to dismiss the complaint for want of *in personam* jurisdiction. An affidavit of James Wilson, executive vice-president of Dickey-Grabler and chairman of the board of Parsons, accompanied the motion.

The record also reflects that the parties took the discovery deposition of Walter Schubert, the immediate past president of Parsons, on September 21, 1982. In addition, on November 1, 1982, James Wilson, on behalf of Dickey-Grabler, answered a set of interrogatories which the State had propounded to the company.

After hearing the arguments of the parties, the trial court granted Dickey-Grabler's motion to quash the service of summons and to dismiss the complaint for want of personal jurisdiction. On January 24, 1983, the court below made the requisite finding, under Supreme Court Rule 304(a) (87 Ill. 2d R. 304(a)) that there was no just reason for delaying an appeal of its order quashing service of summons and dismissing the complaint. The State filed a timely notice of appeal on February 9, 1983.

The following uncontroverted facts relevant to this appeal emerged from the affidavit of James Wilson, the discovery deposition of Walter Schubert, Dickey-Grabler's answers to the State's interrogatories, and, to a much lesser extent, from the parties' pleadings.

Parsons is an Illinois corporation, located in Belvidere, that has been engaged in the business of electroplating and selling casket hardware. As a result of its business operations over the years, Parsons generated wastes which were stored on its property. On December 28, 1979, Dickey-Grabler acquired a 66.9% interest in Parsons. Early the following year, Dickey-Grabler purchased additional shares of stock in Parsons, bringing Dickey-Grabler's total ownership interest to 80.5%.

Dickey-Grabler is a small, privately held Ohio corporation whose

only plant is located in Cleveland. It is primarily a manufacturer of steel stampings for the automobile industry. The corporation does not own any real estate in Illinois; has no phones or phone listings in Illinois; does not advertise in any Illinois newspaper, magazine, or electronic media; has no offices, business facilities, or registered agent in Illinois; does not employ any sales representatives or other individuals in Illinois; has no bank accounts in Illinois; and, does not pay Illinois taxes.

Prior to the time Dickey-Grabler acquired a controlling interest in Parsons, both companies did electroplating work and manufactured casket hardware. In effect, they were competitors. After securing a majority ownership interest in Parsons, Dickey-Grabler discontinued its own electroplating business and transferred that operation, including its accounts, to Parsons between April and June 1980. The electroplating work had accounted for less than 5% of Dickey-Grabler's business. In addition to sending electroplating paraphernalia to Parsons, Dickey-Grabler sent to Parsons, during that same time frame, 34 55-gallon metal drums with liners. While all of the barrels may not have contained a solution, the majority of the drums sent to Parsons which contained a solution were filled with usable chemical products. However, seven of the drums contained residual plating sludge, a waste product generated by Dickey-Grabler's electroplating operation. The wastes were sent to Parsons "for proper disposal." According to Mr. Schubert's deposition, if normal practices were followed, and he had no reason to believe that they were not, it was more than likely that the seven drums of sludge were disposed of some time ago. Schubert related that a past president of Parsons had told Parsons' attorney that he (the past president) processed the sludge and disposed of it by the normal methods. It was Schubert's understanding that Parsons neither requested nor paid for the items which Dickey-Grabler sent between April and June 1980.

After Dickey-Grabler purchased a controlling interest in Parsons, Parsons purchased steel stampings from Dickey-Grabler; Dickey-Grabler sold Parsons $90,000 to $100,000 worth of parts per year, for which Parsons paid $25,000. Parsons used the component parts which it purchased from Dickey-Grabler in the assembly of the caskets that Parsons sold. Overall, Parsons annually purchased from 13% to 20% of its total amount of parts from Dickey-Grabler. Parsons purchased parts from Dickey-Grabler in the same manner that it bought them from other vendors, by the use of a purchase order or, alternatively, by telephoning the order and following it up with a purchase order. Parsons mailed the purchase orders to Dickey-Grabler in Cleveland,

and Dickey-Grabler mailed invoices back to Parsons. All orders which Parsons sent to Ohio were filled in that State, and the goods were shipped to Parsons by an independent carrier. In addition to the parts it sold Parsons, Dickey-Grabler had sales in 1980, 1981, and 1982 to corporations in Illinois (other than Parsons) that represented approximately 0.01% of Dickey-Grabler's total annual sales.

Subsequent to Dickey-Grabler's acquisition of a majority interest in Parsons, James Wilson, the executive vice-president of Dickey-Grabler, became chairman of the board of directors of Parsons, while William Primrose III, also an employee of Dickey-Grabler, became treasurer of Parsons. In addition, several employees of Dickey-Grabler either were transferred to Parsons or secured work with Parsons during the time in question. Also, in the middle of 1980 Dickey-Grabler loaned Parsons $100,000; Parsons had made no payments on that loan at the time it filed for bankruptcy but listed the loan as a liability on its financial statement. After Dickey-Grabler owned a controlling interest in Parsons, Parsons began using two banks in Cleveland, Ohio; Dickey-Grabler also had accounts at the same banks.

Walter Schubert and the department heads of Parsons conducted the company's daily operations and made the day-to-day decisions affecting marketing, policy making, and production scheduling. According to Schubert, Dickey-Grabler did not influence those decisions. When Schubert met with Jim Wilson on a monthly basis to discuss routine business matters involving Parsons, Wilson acted in his capacity as chairman of the board of directors of Parsons. Parsons maintained its own books, prepared its own payroll, and kept its own accounts. However, Parsons sent its monthly financial statements to Ohio for review by Jim Wilson and Bill Primrose. Parsons also paid its own employees and set their salaries and bonuses. Mr. Schubert exercised the authority to hire and discharge employees without prior consultation with Dickey-Grabler. In Schubert's mind, Dickey-Grabler did not have the authority to direct Parsons' business methods.

Between April and June 1982, Schubert and Wilson held discussions to determine whether Parsons would file for bankruptcy. They did not discuss specifically the disposal of the wastes which Dickey-Grabler had sent Parsons in 1980, and no one at Dickey-Grabler requested records of wastes stored at Parsons. During those discussions, Schubert indicated to Wilson that Parsons would have to dispose properly of the wastes on its property prior to ceasing business operations. However, Parsons had no closure plan for waste disposal. At the request of Primrose, records regarding analytical results of waste treatment samples and records of Environmental Protection

Agency transactions concerning permits and waste disposal were sent to Dickey-Grabler at that time.

The State argues that Dickey-Grabler is amenable to suit in Illinois pursuant to sections 2—209(a)(1) and 2—209(a)(2) of the Code of Civil Procedure, commonly known as the long-arm statute. (Ill. Rev. Stat., 1982 Supp., ch. 110, pars. 2—209(a)(1), 2—209(a)(2).) The State asserts that Dickey-Grabler transacted business in Illinois within the meaning of section 2—209(a)(1) by virtue of its control over Parsons, and the fact that it: (1) sent officers to visit Parsons in order to purchase a controlling interest in the company; (2) made several of its own officers and directors the officers and directors of Parsons; (3) changed Parsons' banking operations to Dickey-Grabler's banks in Cleveland; (4) made a loan to Parsons which was not repaid; (5) transferred its electroplating operation to Parsons, including its accounts; (6) sold steel stampings and other component parts to Parsons; and, (7) shipped seven drums containing waste materials to Parsons "for proper disposal." In addition, the State argues that, due to Dickey-Grabler's control over Parsons, Dickey-Grabler committed a tortious act in Illinois, as that term is used in section 2—209(a)(2) of the Code of Civil Procedure (Ill. Rev. Stat., 1982 Supp., ch. 110, par. 2—209(a)(2)), when Parsons failed to dispose of or handle properly the hazardous wastes it had stored in Illinois.

Dickey-Grabler replies that it is not subject to personal jurisdiction in Illinois for two reasons: (1) it did not exert control over Parsons' business activities in Illinois; and (2) it transacted no business in Illinois that was the subject matter of or gave rise to the instant cause of action.

Initially we emphasize that the State's allegation of Dickey-Grabler's control over Parsons relates only to the question whether jurisdiction over Dickey-Grabler exists under the Illinois long-arm statute. The State does not contend that Dickey-Grabler is "doing business" in Illinois through its subsidiary, or that Parsons is a constructive agent for Dickey-Grabler for purposes of service of process here. Thus, the cases cited by Dickey-Grabler in this regard are inapposite. See *Rymal v. Ulbeco, Inc.* (1975), 33 Ill. App. 3d 799, 338 N.E.2d 209; *Vischer v. Dow Jones & Co.* (1945), 325 Ill. App. 104, 59 N.E.2d 884; *Cannon Manufacturing Co. v. Cudahy Packing Co.* (1925), 267 U.S. 333, 69 L. Ed. 634, 45 S. Ct. 250; see generally *Braband v. Beech Aircraft Corp.* (1977), 51 Ill. App. 3d 296, 298, 367 N.E.2d 118, *aff'd* (1978), 72 Ill. 2d 548, 382 N.E.2d 252, *cert. denied* (1979), 442 U.S. 928, 61 L. Ed. 2d 296, 99 S. Ct. 2857, for a discussion of the distinction between "doing business" and "transaction of

business" under the long-arm statute.

Where a defendant contests personal jurisdiction, the party asserting it (here, the State) has the burden of demonstrating a *prima facie* case that jurisdiction exists under the long-arm statute. (Ill. Rev. Stat., 1982 Supp., ch. 110, par. 2—209; *Bobka v. Cook County Hospital* (1983), 117 Ill. App. 3d 359, 360, 453 N.E.2d 828; *Johnston v. United Presbyterian Church in the United States of America, Inc.* (1981), 103 Ill. App. 3d 869, 873, 431 N.E.2d 1275.) Thus, a plaintiff who seeks to hold a nonresident liable must allege facts in the complaint upon which jurisdiction may be based. *Bobka v. Cook County Hospital* (1983), 117 Ill. App. 3d 359, 360, 453 N.E.2d 828.

Section 2—209 of the Code of Civil Procedure provides in relevant part:

> "(a) Any person, whether or not a citizen or resident of this State, *who in person or through an agent does any of the acts hereinafter enumerated,* thereby submits such person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:
>
> (1) The transaction of any business within this State;
> (2) The commission of a tortious act within this State;
>
> * * *
>
> (c) Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him or her is based upon this Section." (Emphasis added.) Ill. Rev. Stat., 1982 Supp., ch. 110, par. 2—209.

Our supreme court has stressed that the standard enunciated in the Illinois long-arm statute is not to be equated with the "minimum contacts" test under the due-process clause. (*Cook Associates, Inc. v. Lexington United Corp.* (1981), 87 Ill. 2d 190, 197-98, 429 N.E.2d 847; *Green v. Advance Ross Electronics Corp.* (1981), 86 Ill. 2d 431, 436, 427 N.E.2d 1203; *Loggans v. Jewish Community Center* (1983), 113 Ill. App. 3d 549, 555, 447 N.E.2d 919.) That clause "requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" (*International Shoe Co. v. Washington* (1945), 326 U.S. 310, 316, 90 L. Ed. 95, 102, 66 S. Ct. 154, 158; accord, *Kutner v. DeMassa* (1981), 96 Ill. App. 3d 243, 247, 421 N.E.2d 231.) The court in *Cook* and *Green* recognized that the Federal due process standard represents only the

outer limits beyond which a State may not proceed to acquire jurisdiction over nonresidents and stated that a State may set its own limits within the perimeters established by the due-process clause. (*Green v. Advance Ross Electronics Corp.* (1981), 86 Ill. 2d 431, 436, 427 N.E.2d 1203.) Accordingly, the court determined that long-arm jurisdiction questions in Illinois should be resolved first by looking to the meaning of the Illinois statute. Only in those instances where the Illinois enactment confers jurisdiction should the court take the second step and assure that the minimum requirements of due process have been satisfied. 86 Ill. 2d 431, 436, 427 N.E.2d 1203; *Veeninga v. Alt* (1982), 111 Ill. App. 3d 775, 777, 444 N.E.2d 780.

Under section 2—209(a)(1) of the Illinois long-arm statute, a single act of a defendant or his agent may be sufficient to find that business was transacted within this State. (Ill. Rev. Stat., 1982 Supp., ch. 110, par. 2—209(a)(1); *Johnston v. United Presbyterian Church in the United States of America, Inc.* (1981), 103 Ill. App. 3d 869, 874, 431 N.E.2d 1275; *Kutner v. DeMassa* (1981), 96 Ill. App. 3d 243, 247, 421 N.E.2d 231.) However, the cause of action must arise from the transaction of the business that purports to give jurisdiction. *International Merchandising Associates, Inc. v. Lighting Systems, Inc.* (1978), 64 Ill. App. 3d. 346, 350, 380 N.E.2d 1047.

■ Relying upon *O'Hare International Bank v. Hampton* (7th Cir. 1971), 437 F.2d 1173, the State contends that the bare assertion in its complaint that Dickey-Grabler exerted control over Parsons and, hence, transacted business in Illinois under section 2—209(a)(1), is sufficient to establish a *prima facie* case of jurisdiction under that section. (Ill. Rev. Stat., 1982 Supp., ch. 110, par. 2—209(a)(1).) We disagree. The *O'Hare* decision stands only for the well-established proposition that in determining whether a *prima facie* case of *in personam* jurisdiction has been established, a court may receive and weigh affidavits and must resolve any conflicts that exist in the affidavits and pleadings in the plaintiff's favor. (*O'Hare International Bank v. Hampton* (7th Cir. 1971), 437 F.2d 1173, 1176; *Kutner v. DeMassa* (1981), 96 Ill. App. 3d 243, 247-48, 421 N.E.2d 231.) We note that here the State did not file any affidavits in support of its complaint. The single assertion in the complaint regarding the question of Dickey-Grabler's control over the actions of Parsons is a mere conclusional allegation which is not admitted as true and which is insufficient by itself, without supporting facts, to constitute a *prima facie* showing of *in personam* jurisdiction. *Cf. Colnar v. Baldknobbers, Inc.* (1982), 107 Ill. App. 3d 234, 237, 437 N.E.2d 718; see generally *Laufenberg v. Golab* (1982), 108 Ill. App. 3d 133, 137, 438 N.E.2d

1238.

■ Further, our review of the facts which were before the trial court on the issue of Dickey-Grabler's control over Parsons leads us to conclude that the trial court did not err in finding that the two companies were, for the most part, separate legal entities. The record reflects that Parsons maintained its own books, kept its own accounts, and prepared its own payroll. While there are common officers or directors serving both corporations, that fact alone is not sufficient to confer jurisdiction over a nonresident parent corporation. (*Graco, Inc. v. Kremlin, Inc.* (N.D. Ill. 1982), 558 F. Supp. 188, 191 n.3.) Also, there is no indication in the record that the two corporations held joint directors' meetings. (See *Vitro Electronics v. Milgray Electronics, Inc.* (1969), 255 Md. 498, 506, 258 A.2d 749, 753.) In addition, Parsons purchased component parts from Dickey-Grabler in the same manner that it bought them from other vendors, through the use of purchase orders and invoices. Parsons' president and department heads made all marketing, policy, and production decisions, and the daily internal affairs of Parsons were determined by that company alone, without any control exerted by Dickey-Grabler. There was no indication that Parsons was used as a marketing conduit by Dickey-Grabler. (See *United States v. Toyota Motor Corp.* (C.D. Cal. 1983), 561 F. Supp. 354, 359; *Waters v. Deutz Corp.* (Del. Super. 1983), 460 A.2d 1332, 1337-38.) Finally, while there were facts indicating that Dickey-Grabler financed and subsidized Parsons by loaning it $100,000, we do not view this as sufficient to constitute control, especially since Parsons had listed the loan on its books as a liability at the time it declared bankruptcy. Under these circumstances, we find insufficient facts to establish Dickey-Grabler's "transaction of business" in Illinois on the basis of any alleged pervasive control over Parsons. Accordingly, we agree with the trial court that Dickey-Grabler cannot be required to answer for all the acts and omissions of its subsidiary, Parsons.

■ Nevertheless, we believe the record contains sufficient facts to establish a *prima facie* case of jurisdiction under the Illinois statute on grounds other than Dickey-Grabler's control over Parsons. The State has enumerated several acts of Dickey-Grabler, independent of its subsidiary, which it contends constitutes the "transaction of business" within the meaning of section 2—209(a)(1) (Ill. Rev. Stat., 1982 Supp., ch. 110, par. 2—209(a)(1)). We perceive only one of these acts, *i.e.*, the shipment of waste from Ohio into Illinois, as being sufficiently connected with the cause of action to be within the purview of section 2—209(a)(1) (Ill. Rev. Stat., 1982 Supp., ch. 110, par. 2—

209(a)(1)). There is no mechanical test to resolve every question of jurisdiction; each case must be resolved on its own particular facts and circumstances. (*Mergenthaler Linotype Co. v. Leonard Storch Enterprises, Inc.* (1978), 66 Ill. App. 3d 789, 383 N.E.2d 1379.) The determination must be made according to what is fair and reasonable in the situation before the court. (66 Ill. App. 3d 789, 797, 383 N.E.2d 1379.) Relevant considerations are the nature of the business transaction, the applicability of Illinois law, the contemplation of the parties and the likelihood that witnesses would be found here. (66 Ill. App. 3d 789, 797, 383 N.E.2d 1379.) A key inquiry is whether the defendant, through its activity, voluntarily invoked the protection and benefits of the State of Illinois. 66 Ill. App. 3d 789, 797, 383 N.E.2d 1379.

The complaint here alleged that Dickey-Grabler, in its own capacity, shipped and stored at the Parsons' site approximately 34 drums of wastes from its Ohio plant, some of which contained cyanide. These wastes were shipped "for proper disposal" by Parsons in Illinois. Along with the waste, other items were also shipped to Parsons as part of Dickey-Grabler's divestiture of its Ohio electroplating operation. Parsons did not request these items, and did not pay for them. There is no indication in the record that Dickey-Grabler paid Parsons for the service of storing and disposing of the waste.

We believe these facts establish a "transaction of business" by Dickey-Grabler in Illinois which is sufficiently connected with the cause of action here to render that company amenable to suit in Illinois under section 2—209(a)(1) of the Code of Civil Procedure. (Ill. Rev. Stat., 1982 Supp., ch. 110, par. 2—209(a)(1).) While Dickey-Grabler argues that the cause of action is not related to its shipment of wastes but rather to Parsons' improper storage and/or disposal of it, we view this as too narrow a view of the jurisdictional requirements of section 2—209(a)(1) (Ill. Rev. Stat., 1982 Supp., ch. 110, par. 2—209(a)(1)). That section is designed to be remedial and liberally construed in favor of the State asserting jurisdiction. (*Ward v. Formex, Inc.* (1975), 27 Ill. App. 3d 22, 24, 325 N.E.2d 812; *Mergenthaler Linotype Co. v. Leonard Storch Enterprises, Inc.* (1978), 66 Ill. App. 3d 789, 799, 383 N.E.2d 1379.) We believe that Dickey-Grabler's act of shipping wastes into this State for storage and disposal by Parsons, pursuant to Parsons' Illinois permit to do so demonstrates Dickey-Grabler's purposeful and voluntary invocation of the benefits and protections of this State's laws, and particularly the Environmental Protection Act. (Ill. Rev. Stat. 1981, ch. 111½, par. 1001 *et seq.*) The violation of that Act is the subject matter of this lawsuit. Under these circumstances, we find a sufficient nexus between Dickey-Grabler's

shipment of waste for storage and disposal here and the instant cause of action.

■ Dickey-Grabler also argues that it cannot be held responsible for the acts and/or omissions of Parsons relating to the waste because it had no control over or participation in Parsons' waste disposal process. While we agree that Dickey-Grabler cannot be held responsible for Parsons' handling of the wastes generated here, we do not agree that as a matter of law Dickey-Grabler can avoid responsibility for the proper disposal of the waste products which it shipped in from Ohio. The facts here warrant an inference that Dickey-Grabler voluntarily availed itself, through its subsidiary, of the benefits of Illinois law. (See *Ronco, Inc. v. Plastics, Inc.* (N.D. Ill. 1982), 539 F. Supp. 391; *Mergenthaler Linotype Co. v. Leonard Storch Enterprises, Inc.* (1978), 66 Ill. App. 3d 789, 383 N.E.2d 1379.) Parsons did not request the waste, nor did Dickey-Grabler pay Parsons to store and dispose of it. Under these circumstances, we think it is clear that as to any waste sent by Dickey-Grabler, Parsons was acting merely as an instrumentality of Dickey-Grabler , and not as a separate legal entity. A *prima facie* case of agency is established where the facts show one acting for another under circumstances implying knowledge of such acts by the supposed principal. (*St. Ann's Home for the Aged v. Daniels* (1981), 95 Ill. App. 3d 576, 579, 420 N.E.2d 478; *Elmore v. Blume* (1975), 31 Ill. App. 3d 643, 647, 334 N.E.2d 431.) We think a *prima facie* case of agency has been established here. On this basis, we conclude that Dickey-Grabler may be held responsible for the tortious acts and omissions of Parsons relating to the wastes shipped from Ohio into Illinois pursuant to both sections 2—209(a)(1) and 2—209(a)(2) (Ill. Rev. Stat., 1982 Supp., ch. 110, pars. 2—209(a)(1), 2—209(a)(2)).

In this regard, we are compelled to comment upon Walter Schubert's testimony that he believed Dickey-Grabler's wastes had already been properly disposed of. We do not consider this bare assertion of belief as conclusively establishing that fact. To the contrary, the State's complaint asserts, without contradiction, that numerous barrels of Dickey-Grabler's waste had been discovered on the premises. This is sufficient in our view to establish a *prima facie* showing that they are indeed involved in the subject matter of this lawsuit. We therefore conclude that the question whether these particular barrels of waste had been properly disposed of prior to the filing of this complaint is a question of fact for the trial court to determine.

■ Having determined that jurisdiction over Dickey-Grabler exists under the long-arm statute, we must consider whether Dickey-

Grabler has certain "minimum contacts" with Illinois such that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " (*International Shoe Co. v. Washington* (1945), 326 U.S. 310, 316, 90 L. Ed. 95, 102, 66 S. Ct. 154, 158; *Cook Associates, Inc. v. Lexington United Corp.* (1981), 87 Ill. 2d 190, 429 N.E.2d 847.) We find sufficient contacts here. Two corporate officers of Dickey-Grabler made several trips to Illinois to view the site of Parsons' operation and to converse with representatives of Parsons prior to purchasing a majority interest in Parsons' stock. In addition, Dickey-Grabler transferred its electroplating operation to Illinois and shipped seven drums of waste into this State. Furthermore, Dickey-Grabler sold Parsons $90,000 to $100,000 worth of parts on an annual basis as well as provided its subsidiary with a $100,000 loan. In short, Dickey-Grabler purposefully availed itself of the privilege of conducting activities within Illinois and should reasonably have anticipated or foreseen that any lawsuit against it and its Illinois subsidiary would be filed in Illinois, the situs of Parsons' operations and the place where the hazardous wastes were transferred and stored. (See *World-Wide Volkswagen Corp. v. Woodson* (1980), 444 U.S. 286, 292, 62 L. Ed. 2d 490, 498, 100 S. Ct. 559, 564.) Thus, we conclude that the requisite "minimum contacts" existed here.

Accordingly, the order of the circuit court of Boone County quashing service of summons on Dickey-Grabler and dismissing the complaint against it for want of *in personam* jurisdiction is reversed and the cause remanded for trial.

Reversed and remanded.

SEIDENFELD, P.J., and NASH, J., concur.