**FIRST FINANCIAL LEASING CORPORATION, Plaintiff,**

v.

**JoAnn HARTGE, individually and d/b/a JoAnn's Concessions, et al., Defendants.**

**No. 87 C 1041.**

United States District Court, N.D. Illinois, E.D.

Sept. 21, 1987.

George W. Hamman, Marvin N. Benn, Wayne H. Michaels, Dawn M. Cassie, Adler & Adler, Chicago, Ill., for plaintiff.

Mitchell Edelson, Larry Carlson, Mitchell, Edelson & Assoc., Lawrence M. Gavin, Brain Martin, Bell, Boyd & Lloyd, George W. Spellmire, Thomas P. McGarry, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., Richard R. Veit, Florissant, Mo., Thomas C. Croft, St. Louis, Mo., for defendants.

**MEMORANDUM OPINION AND ORDER**

WILLIAM T. HART, District Judge.

Plaintiff First Financial Leasing Corporation brought this action against seventeen corporate and individual defendants, alleging violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO") (Count I), violations of the Illinois Consumer Fraud and Deceptive Practices Act, Ill.Rev.Stat. (1986), ch. 121½, § 270a (Count II) and common law fraud (Count III). Of the original defendants, a number have settled with plaintiff, one is in default, and several others have not yet filed their appearances. Four of the remaining defendants, Richard N. Zahnow, Eveready Heating and Sheet Metal, Inc. ("Eveready"), Ralph L. Menees and Thomas C. Croft, have filed motions to dismiss and/or transfer for lack of jurisdiction and/or improper venue. For the reasons stated below, this case is transferred to the United States District Court for the

Eastern District of Missouri pursuant to 28 U.S.C. § 1406(a).

## FACTS

The complaint alleges that defendants formed and participated in a "confidence scheme" according to which certain defendants induced plaintiff to enter into an agreement to purchase non-existent "funnel cake" machines from defendant Eveready and another defendant who purportedly manufactured the equipment, and to lease back the machines to the other individual defendants as purportedly legitimate lessees. Defendant Zahnow is the president of Eveready, defendant Croft was an officer and director of the other defendant manufacturer, and defendant Menees was one of the alleged lessees. Like all of the defendants in the case except for one, who resides in Georgia, all four of the defendants who have brought these motions are either Missouri corporations or residents of Missouri. Plaintiff is an Illinois corporation. Plaintiff claims that the purchase and leaseback transactions were initiated by defendants, who provided plaintiff with both corporate and personal financial information in Illinois through an alleged broker, T.E. Mattingly. After receiving credit approval, plaintiff alleges, the individual defendants signed the equipment leases, and certain other defendants signed written guarantees for the payment of the leases.

According to plaintiff, the defendant lessees were paid varying amounts in exchange for providing their credit information to fraudulently obtain the leases, and sent signed, written acknowledgements that they had received the equipment. Other defendants would then purportedly issue invoices to plaintiff for payment. Plaintiff complains that it entered into a total of six purchase and leaseback transactions, sustaining approximately $75,000 in damages, and that it was forced to reacquire the leases when they went into default.

Defendants deny any participation whatever in the alleged fraudulent scheme. They insist that neither Mattingly nor anyone else was acting as their agent when purportedly negotiating and carrying out the transaction, and that any signatures on documents involved in the transaction purporting to be theirs are, in fact, forgeries. Zahnow, Eveready, Menees and Croft have each moved to dismiss, or alternatively, for transfer, arguing variously that this court lacks personal jurisdiction over them under both § 1965(b) of RICO, 18 U.S.C. § 1965(b) and the Illinois long arm statute, Ill.Rev.Stat. (1986), ch. 110, § 2–209,[1] and that venue in this district is improper under both § 1965(a) of RICO, 18 U.S.C. § 1965(a) and the general venue statute, 28 U.S.C. § 1391(b). Defendants also argue that the written consent to jurisdiction and venue provisions contained in the guarantees neither confer jurisdiction nor establish that venue is proper in this district, since they were never actually signed by defendants.

## DISCUSSION

### Personal Jurisdiction

The burden of demonstrating the existence of personal jurisdiction rests on plaintiff as the party asserting jurisdiction. *O'Hare International Bank v. Hampton*, 437 F.2d 1173, 1176 (7th Cir.1971). In resolving factual disputes on a motion to dismiss for lack of personal jurisdiction, the party asserting that jurisdiction is proper is entitled to the favorable resolution of all relevant factual disputes. *Neiman v. Rudolf Wolff & Co.*, 619 F.2d 1189, 1190 (7th Cir.), *cert. denied*, 449 U.S. 920, 101 S.Ct. 319, 66 L.Ed.2d 148 (1980); *United Steelworkers of America, AFL–CIO v. Fermet Reclamation, Ltd.*, 627 F.Supp. 1213, 1215 n. 8 (N.D.Ill.1986).

■ The parties may file affidavits relative to a motion to dismiss, and ordinarily,

---

1. Because none of these four defendants is a resident of Illinois, the only possible bases for asserting jurisdiction over them with respect to the RICO count of the complaint would be § 1965(b) of RICO or § 2–209 of the long arm statute, and the only possible basis for asserting jurisdiction over them as to all three counts of the complaint (both the RICO and state law claims) would be the long arm statute.

when they do, all conflicts in such affidavits must be resolved in favor of the plaintiff. *Jacobs/Kahan & Co. v. Marsh*, 740 F.2d 587, 589 (7th Cir.1984). However, where an affidavit refutes the allegations of the complaint, the affidavit must be taken as true unless the plaintiff submits counteraffidavits which dispute the representations made. *Professional Group Travel, Ltd. v. Professional Seminar Consultants, Inc.*, 136 Ill.App.3d 1084, 91 Ill. Dec. 656, 659–61, 483 N.E.2d 1291, 1294–96 (2d Dist.1985); *Kutner v. DeMassa*, 96 Ill. App.3d 243, 51 Ill.Dec. 723, 421 N.E.2d 231 (1st Dist.1981).

In support of its claim that jurisdiction exists over defendants under the long arm statute, plaintiff points to the correspondence, financial information, leases and guarantees purportedly sent into Illinois by defendants, as well as the telephone and other contacts made in Illinois by Mattingly (who, plaintiff claims, was an agent of defendants) and Hartge (one of Eveready's employees). Plaintiff also claims that defendant Menees later signed and mailed to plaintiff at least one check in connection with the transaction which was drawn on his own bank account. Plaintiff also emphasizes that it was defendants who initiated the transaction by soliciting the lease agreements from plaintiff in Illinois, and that the guaranty agreements purportedly signed by certain of the defendants contained provisions waiving objections to being sued in Illinois.

The affidavits submitted by Zahnow (on behalf of himself and Eveready), Menees and Croft squarely dispute plaintiff's allegations that they had *any* jurisdictional contacts with the state of Illinois. All three defendants represent in their sworn statements that they never signed any leases or guarantees, or authorized anyone else to sign for them, and that the purported signatures relied on by plaintiff are actually forgeries. Defendants all deny having sent—or having authorized anyone else to send on their behalf—any financial information or other communications to plaintiff. All deny that Mattingly was ever authorized to act as their agent; defendant Zahnow further denies that Hartge—or

any other officer or employee of Eveready—was ever authorized to sign any resolutions expanding the corporate purpose or business of Eveready into any such business as leasing or guaranteeing leases of funnel cake machines. Defendant Menees also specifically denies having ever sent any checks or documents to plaintiff in Illinois, or knowing of or consenting to any checks being sent. Menees points out that the payee on the check plaintiff claims he sent was left blank, and that the check was not accompanied by any letter or other notation indicating that it was to have been intended as a payment under the lease. All defendants deny ever having ratified any aspect of the alleged funnel cake machine transaction by corporate action, acquiescence, or receipt of benefits.

Given these specific representations made in the various affidavits submitted by defendants, it was incumbent on plaintiff to submit counteraffidavits refuting the factual claims made in at least the four critical areas of (1) the authenticity of the signatures on the leases and lease guarantees; (2) the claimed agency of Mattingly; (3) the authority of Hartge to act for Eveready; and (4) the purpose of the check purportedly sent by Menees. Importantly, however, the affidavits submitted by plaintiff are essentially silent on all of these issues.

For example, on the question of authenticity, plaintiff merely reiterates its contention that the leases and guarantees sent to plaintiff in Illinois bore the signatures of defendants, in their individual or corporate capacities, but it makes no attempt to address the pivotal issue whether the signatures themselves were real or forgeries. This deficiency is particularly significant because plaintiff's counsel was apparently informed in October 1986 that the signatures appeared to be forgeries, and was provided with handwriting exemplars which should have enabled him either to confirm or refute defendants' claim of forgery.

Similarly, while plaintiff's affidavits recite that Hartge signed both corporate resolutions authorizing the transaction and a guaranty on behalf of Eveready, they say

nothing to counter the contention made in Zahnow's affidavit that Hartge was not *authorized* to sign either the resolution or the guaranty. In addition, while plaintiff states that Mattingly *represented* himself as an agent of defendants when he dealt with plaintiff in Illinois, it nowhere counters defendants' explicit claim that Mattingly was not, in fact, an agent. Since the existence of an agency relation cannot be established solely by statements of the agent, *Prudential Insurance Co. v. Curt Bullock Builders, Inc.*, 626 F.Supp. 159, 165 (N.D.Ill.1985), plaintiff's showing here is also insufficient.

■ Plaintiff's failure to file any counteraffidavits which directly contradict or rebut defendants' affidavits in these important areas renders its jurisdictional claims altogether inadequate. Since plaintiff has not made the requisite showing, defendants' statements must be taken as true notwithstanding the existence of contrary allegations in the complaint. This case is similar to *Kutner v. DeMassa, supra,* where the plaintiff sought to base jurisdiction over the defendant on the commission of tortious acts within Illinois but the defendant disclaimed that the parties who committed the actions alleged were acting as his agents. The plaintiff filed a counteraffidavit stating only that he believed the allegations of agency in his complaint were true. The court held that since the plaintiff's counteraffidavit was unsupported by any facts, it was insufficient to demonstrate an agency relationship so as to make a *prima facie* showing that jurisdiction existed. *See also Professional Group Travel, supra* 136 Ill.App.3d at 1084, 91 Ill.Dec. 656, 483 N.E.2d 1291 (no personal jurisdiction where defendant's explicit denial of agency relationship on which jurisdiction was predicated was not contradicted by plaintiff).

Plaintiff also maintains that certain of the defendants consented to be sued in Illinois because the lease guarantees purportedly signed by them contained a consent to jurisdiction provision. It is true that under *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), forum selection clauses are *prima facie* valid and enforceable. *See also Rouse Woodstock, Inc. v. Surety Federal Savings & Loan Ass'n,* 630 F.Supp. 1004 (N.D.Ill.1986); *Crescent Corp. v. Procter & Gamble Co.,* 627 F.Supp. 745 (N.D.Ill.1986). In this case, however, as discussed above, defendants maintain that the signatures on the guarantees were either forged or unauthorized. Plaintiff argues that these issues of authenticity and authority present questions of fact which cannot be resolved on a motion to dismiss. However, these issues would raise questions of fact only *if* plaintiff had contradicted the facts stated in defendants' affidavits relating to authenticity and authority. Having failed to submit any evidence whatever on these issues, plaintiff cannot simply claim that defendants waived their objections to jurisdiction by signing the guarantees.

Plaintiff also seeks to predicate personal jurisdiction over defendants on the RICO statute. 18 U.S.C. 1965(b) provides that:

[i]n [civil RICO actions] in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.

Although this provision authorizing nationwide service of process would appear to confer jurisdiction over defendants as to the RICO claims asserted in Count I *if* plaintiffs could make a showing that the ends of justice so require, it still would not provide jurisdiction as to the pendent state claims in Counts II and III. In addition, dismissal or transfer of this action is still necessary unless venue is also proper in this district under either the RICO venue provision, 18 U.S.C. § 1965(a) or the general venue statute, 28 U.S.C. § 1391(b).

*Venue*

The purpose of statutory venue provisions is "to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial." *Leroy v.*

*Great Western United Corp.*, 443 U.S. 173, 183–84, 99 S.Ct. 2710, 2716, 61 L.Ed.2d 464 (1979) (emphasis in original). Venue must be properly laid as to each defendant, and in addition, where multiple causes of action are joined, venue must be proper as to each one. *Payne v. Marketing Showcase, Inc.*, 602 F.Supp. 656 (N.D.Ill.1985). Although there is a split of authority on the question, this court follows the rule that where, as here, a defendant challenges venue under Fed.R.Civ.P. 12(b)(3), the plaintiff has the burden of proving that venue is proper in this district. *Payne, supra* at 658. In this case, the same factors discussed above that show that this court lacks personal jurisdiction over defendants under the long arm statute also establish that venue is not proper in this district under either § 1965(a) of RICO or under the general venue statute, 28 U.S.C. § 1391(b).

■ The venue provision of RICO, 18 U.S.C. § 1965(a) provides:

> Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs.

None of the prerequisites for venue under this section are satisfied here. First, it is undisputed that none of the defendants reside here. Second, although plaintiff charges that the purported scheme to defraud spanned a period of one year, defendants are not "found" here, given that the word "found" as used in § 1965(a) means a "presence and 'continuous local activities' within the district." *Payne, supra* at 659, *quoting C.C.P. Corp. v. Wynn Oil Co.*, 354 F.Supp. 1275, 1278 (N.D.Ill.1973). Third, as already discussed, plaintiff has not adequately countered defendants' allegations that they do not have an agent within this district. *See Payne, supra* at 659. Finally, none of the defendants "transacts his affairs" in this district, since that requires " 'substantial business activity ... done within the forum with continuity of character.' " *Id., quoting C.C.P. Corp., supra* at 1278. Given plaintiff's failure to establish even the minimal transaction of business

by defendants in Illinois necessary for long arm jurisdiction, this factor clearly is not present. Thus, even assuming that jurisdiction exists over defendants under RICO, venue in this district is improper under § 1965(a).

28 U.S.C. § 1391(b), the only other possible basis for venue in this district, provides:

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law.

Here, because none of the defendants reside in Illinois, venue is proper under § 1391(b) only if the claim arose in this district.

In *Leroy v. Great Western United Corp., supra*, the Supreme Court set out the standards to be used in determining where a claim arose for purposes of § 1391. The Court stated that:

> the broadest interpretation of the language of § 1391(b) is that in the unusual case in which it is not clear that the claim arose in only one specific district, a plaintiff may choose between those two (or conceivably even more) districts that with approximately equal plausibility—in terms of the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (but *not* of the plaintiff)—may be assigned as the locus of the claim.

*Leroy, supra*, 443 U.S. at 185, 99 S.Ct. at 2717.

Plaintiff here has not sustained its burden of showing that the claim arose in this district for purposes of § 1391(b). This court has emphasized that "[w]here 'the claim arose' should be ascertained by advertence to events having operative significance in the case and a common sense appraisal of the implications of those events for accessibility to witnesses and records." *Payne, supra* at 660, *quoting Robbins v. First American Bank*, 514 F.Supp. 1183, 1192 (N.D.Ill.1981); *see also Lyons Savings & Loan Ass'n v. Westside Bancorporation, Inc.*, 636 F.Supp. 576, 583 (N.D.Ill.1986); *Medical Emergency Service*

*Associates v. Duplis,* 558 F.Supp. 1312, 1315 (N.D.Ill.1983).

Plaintiff urges this court to adopt the "weight of the contacts" test to determine the locus of the claim. Plaintiff insists that the weight of the contacts in this case occurred in Illinois. Plaintiff argues that it was in Illinois that it received the initial proposal, financial documentation and other correspondence from defendants; in Illinois that it negotiated with Mattingly, and entered into the purchase and lease agreements; in Illinois that it received payments on the leases; and in Illinois that its injury was felt. Since defendants all resided in and purportedly conducted any participation in the transaction from Missouri, however, it cannot be said that Missouri is any less plausible a forum than is Illinois. The fact that the guaranty agreements contained consent to venue provisions also does not establish that venue is proper in this district, since, as discussed above, plaintiff has not adequately rebutted defendants' claim that the signatures on the guaranty itself were actually forged.

In addition, although plaintiff suffered the economic impact of defendants' allegedly wrongful conduct in Illinois, the law is clear that the place of injury, while significant, is not determinative for purposes of venue. *Lyons, supra* at 584; *Payne, supra* at 660; *Medical Emergency Service, supra* at 1315; *Robbins, supra* at 1193. To hold that a claim arises anywhere its economic effect is felt would mean that the situs of a cause of action would always be the residence of the plaintiff, and would render meaningless the distinction which § 1391 makes between the place where the claim arises and the place where the plaintiff resides. This would remove the benefit which Congress intended to confer on defendants in enacting § 1391(b). *Medical Emergency Services, supra* at 1316, *citing Leroy,* 443 U.S. at 183–87, 99 S.Ct. at 2716–18.

This conclusion is bolstered by the fact that, following *Leroy,* venue is primarily a question of convenience. *See Robbins, supra* at 1193. In this case, while plaintiff is an Illinois corporation, all remaining defendants, except for one who lives in Georgia, reside in Missouri. Without question, Missouri is a more convenient location for the majority of the parties than Illinois would be.

Missouri is also a much more convenient forum for the vast majority of the witnesses. Each of the fourteen individual defendants, and representatives of the corporate defendants, will undoubtedly be called as witnesses to testify as to defendants' involvement, or lack of involvement, in the alleged confidence scheme, and as noted, with only one exception, all the potential witnesses reside in Missouri. Plaintiff points out that all of its own witnesses are located in Illinois, but it has not specified the number of witnesses it expects to call or exactly what testimony they are expected to give.

In analyzing the convenience of the witnesses, this court must consider not only the number of potential witnesses in each of the districts, but also the nature and quality of their testimony and whether they can be compelled to testify. *Environmental Services, Inc. v. Bell Lumber & Pole Co.,* 607 F.Supp. 851, 854 (N.D.Ill.1984). Importantly, Mattingly, the alleged agent of defendants and a major figure in the purported scheme who is expected to be a key witness for defendants, has already settled with plaintiff and been dismissed from the case. If the case were tried in Illinois, Mattingly would be beyond this court's subpoena power, and defendants would be deprived of a vital witness. In addition, a number of other defendants who have been named in this case have not yet filed appearances, and thus may also be unavailable as witnesses if the case were to be tried in Illinois. The fact that some defendants could be forced to defend themselves against claims based on the conduct of other unavailable defendants without the ability to examine or cross-examine those defendants militates strongly against venue in this district.

Plaintiff also argues that the fact that nearly all relevant documentary evidence is located in Illinois supports venue in this district. Although the location of docu-

mentary evidence is also a factor to be considered in determining whether venue is proper, *Waites v. First Energy Leasing Corp.*, 605 F.Supp. 219 (N.D.Ill.1985), it is not alone determinative. In light of defendants' contention that their signatures were forged on the relevant documents and their authority fraudulently misrepresented by others—a contention plaintiff has not attempted to refute in its affidavits—a "common sense appraisal" of the contours of this case requires this court to conclude that venue properly lies in Missouri—not Illinois. *See Lyons, supra* at 584, *quoting Payne, supra* at 660; *see also Kramer v. Pittstown Point Landings, Ltd.*, 637 F.Supp. 201 (N.D.Ill.1986); *Follett College Stores Corp. v. Fernandez*, 587 F.Supp. 1051 (N.D.Ill.1984).

When venue is improper, a court may either dismiss or transfer the case under § 1406(a). Because courts favor the resolution of disputes on the merits, in the interest of justice, this case will be transferred to the Eastern District of Missouri where the claim arose and where both jurisdiction and venue appear to be proper as to all parties.[2]

IT IS THEREFORE ORDERED that:

(1) This case is transferred pursuant to 28 U.S.C. § 1406(a) to the United States District Court for the Eastern District of Missouri.

(2) Ten days from the date of this order the clerk of this court shall transfer the file in this case to the clerk of the United States District Court for the Eastern District of Missouri.

---

**2.** Even if venue were found to be proper here under either RICO or the general venue statute, this court would still transfer this action to

Missouri pursuant to 28 U.S.C. § 1404(a) for the convenience of parties and witnesses, in the interest of justice. *See Payne, supra* at 661 n. 4.