**Donnan Sharp PLUMB, Plaintiff,**

v.

**Oren J. COTTLE, Individually and t/a Modern Lightning Protection Company, and Modern Lightning Protection Company and Capital Lightning Protection Company, Inc., Defendants.**

Civ. A. No. 79–302.

United States District Court,
D. Delaware.

June 24, 1980.

Alfred M. Isaacs, of Flanzer & Isaacs, Wilmington, Del., for plaintiff; Ronald B. Hamilton, of Cozen, Begier & O'Connor, Philadelphia, Pa., of counsel.

B. Wilson Redfearn, Colin M. Shalk, of Tybout, Redfearn, Casarino & Pell, Wilmington, Del., for defendants.

## OPINION

STEEL, Senior District Judge:

Plaintiff Donnan Sharp Plumb brought this suit alleging that her property was damaged by fire as a result of a defect and malfunction in a lightning protection system sold, manufactured, distributed, and installed by the defendants. The defendants have moved to dismiss the suit for lack of personal jurisdiction and for insufficiency of service of process, and on the additional ground that the statute of limitations bars the action.

The complaint and affidavits reveal the following: plaintiff Plumb is a resident of Maryland. Defendant Oren J. Cottle, sued individually and trading as Modern Lightning Protection Company, is a resident of North Carolina. Defendant Modern Lightning Protection Company, a proprietorship owned solely be Cottle, is in the business of selling and installing lightning protection equipment. Defendant Capital Lightning Protection Company, Inc., a North Carolina corporation of which Cottle is the president, manufactures lightning protection systems. Subject matter jurisdiction is based on diversity of citizenship.

On March 7, 1972, Cottle and Modern sold to Plumb at her Maryland residence the lightning protection system at issue in this litigation. The system was installed on Plumb's house and barn in Maryland on or about the same date. The installation was done by two employees of Modern, both of whom were residents of North Carolina. The fire that caused the damage to this Maryland property occurred on or about July 6, 1977.

Plumb purported to serve process on the defendants via the Delaware long arm statute, 10 Del. C. § 3104 (Michie Supp. 1978). This statute provides in pertinent part:

(a) The term "person" in this section includes any natural person, association, partnership or corporation.

(b) The following acts constitute legal presence within the state. Any person who commits any of the acts hereinafter enumerated thereby submits himself to the jurisdiction of the Delaware courts and is deemed thereby to have appointed and constituted the Secretary of State of this State his agent for the acceptance of legal process in any civil action against such nonresident person arising from the following enumerated acts. The acceptance shall be an acknowledgement of the agreement of such nonresident that any process when so served shall have the same legal force and validity as if served upon such nonresident personally within the State, and that such appointment of the Secretary of State shall be irrevocable and binding upon his personal representative.

(c) As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or his personal representative, who in person or through an agent:

(1) Transacts any business or performs any character of work or service in the State;

(2) Contracts to supply services or things in this State;

(3) Causes tortious injury in the State by an act or omission in this State;

(4) Causes tortious injury in the State or outside of the State by an action or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;

(5) Has an interest in, uses or possesses real property in the State; or

(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

The defendants contend that the long arm statute is inapplicable to them. Therefore, they argue, Plumb may not use the statute to serve them with process and thus to acquire personal jurisdiction over them.

The basic question is whether these defendants, under the facts of the case as presented in the record, come within the terms of the statute itself. The record makes clear that section 3104(c)(1)–(3), (5)–(6) would not apply, because the cause of action arose from none of the acts enumerated in those subsections. The only subsection possibly applicable is (c)(4), under which a person may be subjected to the jurisdiction of the Delaware courts if he

> [c]auses tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State.

■ Capital has averred in an affidavit that it sells no lightning protection systems in Delaware and ships no such systems to Delaware; that it maintains no branch or subsidiary office in Delaware; and that it is not licensed to do business in Delaware. Doc. No. 13. The Court accepts as true these sworn averments. *See Gibbs v. Buck*, 307 U.S. 66, 71–72, 59 S.Ct. 725, 729, 83 L.Ed. 1111 (1939) (mode of determining an issue of jurisdiction is left to the discretion of the trial court). The record therefore shows that Capital does not come within the terms of the statute. Consequently, as to it the motion to dismiss for lack of personal jurisdiction must be granted.

■ On the other hand, Modern currently holds, and has held since 1978, a license to do business in Delaware. In 1978 it derived approximately $36,000, or 3% of its income, and in 1979 about $21,000, or 2% of its income, from sales in Delaware. This amount of revenue is substantial. Because Cottle and Modern both do business in and derive substantial revenue from Delaware, they come within the terms of section

3104(c)(4). Personal jurisdiction was obtained by a valid service of process.

Cottle and Modern next argue that section 3104 may not be applied retroactively to causes of action that accrued prior to July 11, 1978, the effective date of its current version.[1] That date was after both the 1972 sale and installation and the 1977 fire.[2]

■ The defendants' contention is at variance with *Harmon v. Eudaily*, 407 A.2d 232, 233–35 (Del.Super.Ct.1979), appeal docketed, No. 264, 1979 (Del. Sept. 26, 1979), which held that the 1978 amendment to section 3104 was retroactive. In that case Judge O'Hara explained that the most significant barrier to retroactive application of the amended section would be unfairness that resulted from a person's reliance on prior law. The defendants have made no showing that in dealing with Plumb they acted in reliance on the provisions of section 3104 as it existed prior to the 1978 amendment. The defendants argue that retroactive application of section 3104 would affect their substantive rights by providing Plumb with a new remedy. The amendment, however, did not affect any substantive rights that Plumb might have had against the defendants, but merely provides Plumb with a Delaware forum in which to enforce whatever rights she has. *See McGee v. International Life Ins. Co.*, 355 U.S. 220, 224, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957). In addition, Rule 4(e) of the Federal Rules of Civil Procedure provides for service of process pursuant to the state long arm statute. Service of process rules are procedural and do not affect substantive rights. The defendants make much of language in *Harmon* to the effect that the alleged tortfeasor in that case was a resident of Delaware at the time of the act complained of, and therefore could not expect to escape process by subsequently moving out of state. This is an insufficient basis on which to distinguish *Harmon's* holding.

1. The pre-1978 version of section 3104 concerned service of nonresidents doing business in Delaware through a branch or agency in the state. Service on the defendants by use of the old version therefore could not have been accomplished.

2. As will be discussed below, the parties are in dispute as to when the various causes of action accrued. It is clear, however, that they accrued at the latest in July of 1977, when the fire occurred.

The defendants also contend that to apply section 3104 to them would violate due process, in that they have insufficient contacts with Delaware for a court sitting in the state to exercise jurisdiction over them. They point out, correctly, that for a person to be subject to in personam jurisdiction, "he must have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Those conditions are satisfied if the contacts make it reasonable to require a nonresident to defend the particular suit brought there. *Id.* at 317, 66 S.Ct. at 159.

The minimum contacts inquiry consists of more than a merely mechanical or quantitative counting of contacts. Also to be considered are the quality and nature of the activity carried on in the forum state. *Id.* at 319, 66 S.Ct. at 160. A state may through a long arm statute express an interest in asserting jurisdiction over a particular type of case. Such an explicit expression of interest serves to enhance the constitutional sufficiency of contacts that might otherwise be insufficient to support personal jurisdiction. *See Shaffer v. Heitner*, 433 U.S. 186, 214–16, 97 S.Ct. 2569, 2584–86, 53 L.Ed.2d 683 (1977); *Hanson v. Denckla*, 357 U.S. 235, 252, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958); Note, Measuring the Long Arm After *Shaffer v. Heitner*, 53 N.Y.U.L.Rev. 126, 134–35 (1978).

Viewed in this light, the contacts of Modern and Cottle with Delaware are sufficient for this Court to exercise personal jurisdiction over them. They hold a license to do business in Delaware, and do tens of thousands of dollars of business here per year. The regular and systematic conduct of business activities within a state allows that state without offending due process to exercise jurisdiction over a cause of action that did not arise in that state and is unrelated to those activities. *Perkins v. Benguet Mining Co.*, 342 U.S. 437, 447–48, 72 S.Ct. 413, 419, 96 L.Ed. 485 (1952). Deriva-

tion of substantial revenue within a state is generally sufficient to maintain personal jurisdiction, even in cases involving causes of action otherwise unrelated to those minimum contacts. *See Wilkerson v. Fortuna Corp.*, 554 F.2d 745, 750 (5th Cir.), *cert. denied*, 434 U.S. 939, 98 S.Ct. 430, 54 L.Ed.2d 299 (1977). In the instant case, jurisdiction is not based "on one, isolated occurrence and whatever inferences can be drawn therefrom." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295, 100 S.Ct. 559, 566, 62 L.Ed.2d 490 (1980). Cottle and Modern's substantial sales in Delaware constitute sufficient minimum contacts to allow them to be brought before this Court. In addition, the long arm statute specifically puts them on notice that as a result of their doing business in Delaware they may be haled into a Delaware court for causing an injury out of state by an out of state act. The combination of Cottle and Modern's business activities in Delaware, coupled with Delaware's expression of interest in asserting jurisdiction over cases of this type is enough to satisfy the requirements of due process.

Cottle and Modern suggest that it would be unfair to require them to defend this suit in Delaware, for they were doing no business in Delaware when the cause of action accrued. They currently do business in Delaware, and were doing so when the suit was filed. Along with the benefits of doing business here must come the potential burden of being subject to suit in the Delaware courts. *See World-Wide Volkswagen Corp. v. Woodson*, 100 S.Ct. at 567. The statute of limitations when applicable amply protects the defendants against having to defend suits that antedate the current long arm statute. It works no fundamental unfairness to require these defendants to defend this suit in Delaware, even though the cause of action arose before they were doing business here.

Because the Court has personal jurisdiction over Cottle and the Modern Lightning Protection Company and lacks personal jurisdiction over the Capital Lightning Protection Company, Inc., the motion to dismiss

for lack of personal jurisdiction will be denied as to Cottle and Modern and granted as to Capital.

The defendants have also moved to dismiss on the ground that the statute of limitations bars the suit. The complaint was filed on July 25, 1979.

For each of the several causes of action set forth in the complaint, the Court must initially determine whether to apply the Delaware or Maryland statute of limitations. This inquiry is made necessary by the Delaware borrowing statute, 10 Del.C. § 8121 (Michie 1975), which provides in relevant part:

> Where a cause of action arises outside of this State, an action cannot be brought in a court of this State to enforce such cause of action after the expiration of whichever is shorter, the time limited by the law of this State, or the time limited by the law of the state or country where the cause of action arose, for bringing an action upon such cause of action. . .

■ When the borrowing statute requires the application of another jurisdiction's statute of limitations, "the borrowed statute is accepted with all its accoutrements." *Frombach v. Gilbert Assoc.*, 236 A.2d 363 (Del. 1967), *cert. denied*, 391 U.S. 906, 88 S.Ct. 1655, 20 L.Ed.2d 419 (1968). Included among such accoutrements are rules governing the time when causes of action accrue for purpose of beginning the limitations period.

■ Count I of the complaint sets forth a cause of action based on breach of implied warranty of merchantability. Actions for breach of this warranty are governed by the four-year statute of limitations of the Delaware Uniform Commercial Code. 6 Del. C. § 2–725(1). The cause of action accrues when tender of delivery is made. *Id.* § 2–725(2). Tender of delivery of Plumb's lightning system occurred in July 1972. The statute of limitations ex-

pired in July 1976. This cause of action is therefore time barred under Delaware law.[3] Count I also alleges a cause of action based on breach of expressed and implied warranties that the lightning protection system was properly installed, designed, and manufactured, and was free from defects. In Delaware such warranties come under the three-year statute of limitations, 10 Del. C. § 8106 (Michie 1975), which begins to run at the time of sale. *DiBiase v. A & D, Inc.*, 351 A.2d 865, 867 (Del.Super.Ct. 1976). As the sale occurred in July 1972, the limitations period expired in July 1975. This cause of action is likewise time barred in Delaware.

The borrowing statute in effect provides that an action may not be maintained in the Delaware courts if it is time barred either in Delaware or in the state in which the cause of action arose. Because the causes of action stated in Plumb's Count I are barred in Delaware, the Court may not entertain them.

Count II of the complaint sounds in negligence. Both Delaware and Maryland apply a three-year statute of limitations to negligence actions. 10 Del. C. § 8106; Md.Cts. & Jud.P.Code Ann. § 5–101 (Michie 1980). Neither party disputes this. The parties disagree as to the time when the cause of action accrued, however. The defendants argue that the cause of action accrued in July 1972, when the allegedly negligent acts occurred. Plumb insists that it accrued in July 1977, when the fire occurred.

■ In Delaware, a cause of action in negligence accrues at the time of the injury to the plaintiff. *E.g. Freedman v. Beneficial Corp.*, 406 F. Supp. 917, 922 (D. Del. 1975); *Howmet Corp. v. City of Wilmington*, 285 A.2d 423, 425 (Del.Super.Ct. 1971). Plumb was injured when the fire damaged her property, not merely when the system was installed. The instant case closely resembles *Nardo v. Guido DeAscanis & Sons, Inc.*, 254 A.2d 254 (Del.Super.Ct. 1969). In that case, the defendant con-

---

**3.** The result would be the same under Maryland law. *See* Maryland U.C.C. Ann. § 2–725(1), (2) (Michie 1975).

structed a house for the plaintiff in 1957. Beginning in 1959, the basement wall became wet after rainstorms. In addition, in 1960 or 1961 the roof began to sag. In 1965 or 1966 the plaintiff discovered that these problems stemmed from improper placement of the roof rafters when the house was first built. It was held that the cause of action for the basement dampness accrued in 1959, and for the sagging roof in 1960 or 1961.[4] Thus, under Delaware law, Plumb's cause of action for negligence accrued in July 1977.

Maryland would apparently apply a "time of discovery" rule to determine when the cause of action in negligence accrued. In *Callahan v. Clemens*, 184 Md. 520, 41 A.2d 473 (1945), a stone retaining wall on the border of the plaintiff's property was constructed, allegedly negligently, in 1929. The wall began to collapse in 1939. The Maryland Court of Appeals held that although the allegedly tortious act occurred in 1929, the cause of action did not accrue until 1939. *Id.* at 476. The Court of Appeals recently stated that its decision in *Callahan* involved an application of the time of discovery rule. *Harig v. Johns-Manville Corp.*, 284 Md. 70, 394 A.2d 299, 303–04 (1978). Viewed in the light of this principle, the negligence of the defendants in the instant case was discovered only in 1977, when the fire damaged Plumb's property. The cause of action accrued therefore in 1977.[5]

Thus, under both Delaware and Maryland law, the cause of action for negligence accrued in 1977. The three year statute of limitation of neither state had run when the suit was filed in July 1979. Therefore the cause of action in negligence is not time barred.

Count III of the complaint sounds in strict liability. The doctrine of strict liability is recognized in Maryland, *Phipps v. General Motors Corp.*, 278 Md. 337, 363 A.2d 955, 963 (1976), but not in Delaware in cases involving sales of goods, *Cline v. Prowler Indus. of Maryland, Inc.*, No. 239, 1978 (Del. June 3, 1980). In Maryland, a strict liability claim like that in the instant case is governed by the three-year statute of limitations, Md.Cts. & Jud.P.Code Ann. § 5–101. For purposes of determining when a cause of action accrues, a "strict liability action should be treated the same under § 5–101 as [a] negligence action." *Harig v. Johns-Manville Corp.*, 394 A.2d at 306; *see Phipps v. General Motors Corp.*, 363 A.2d at 962. Under Maryland law, Plumb's strict liability cause therefore accrued in July 1977. It is not time barred. Since strict liability is not recognized in Delaware, Delaware law would not mandate a shorter limitations period than would Maryland law for this cause of action.

The causes of action in Count I of the complaint are therefore time barred, while those in Counts II and III are not. The motion to dismiss on statute of limitations grounds will be granted with respect to Count I, and denied with respect to Counts II and III.

Plumb contends that the defendants' motions were untimely and otherwise procedurally irregular. The Court finds no merit in these contentions.

---

**4.** The New Hampshire Supreme Court, in a case virtually identical to the instant case, held that a cause of action for negligent installation of lightning rod equipment accrued not when the equipment was installed, but when the plaintiff's house was destroyed by fire allegedly resulting from the negligent installation. *White v. Schnoebelen*, 91 N.H. 273, 18 A.2d 185, 186–87 (1941).

**5.** The Court intimates no view as to whether the Delaware courts would apply the time of

discovery rule to facts like those in this case, as they have in certain other types of action. *Cf. Pioneer Nat'l Ins. Co. v. Sabo*, 432 F.Supp. 76 (D.Del. 1977) (legal malpractice); *Isaacson, Stolper & Co. v. Artisan's Savings Bank*, 330 A.2d 130 (Del. 1974) (accounting malpractice); *Layton v. Allen*, 246 A.2d 794 (Del. 1968) (medical malpractice); *Rudginski v. Pullella*, 378 A.2d 646 (Del.Super.Ct. 1977) (negligently installed underground septic tank).