**LaNUOVA D & B, S.p.A. and Dibiten S.p.A. Italian corporations, Defendants, Fourth and Fifth Party Defendants Below, Appellants,**

v.

**BOWE COMPANY, INC., a New Jersey corporation, Defendant, Fourth and Fifth Party Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Submitted: Feb. 25, 1986.
Decided: June 24, 1986.
Reargument Denied: Aug. 5, 1986.

Victor F. Battaglia and Philip B. Bartoshesky (argued), of Biggs and Battaglia, Wilmington, for appellants.

Howard M. Berg of Howard M. Berg & Associates, P.A., Wilmington, for appellee.

Before CHRISTIE, C.J., HORSEY and WALSH, JJ.

WALSH, Justice:

This is an interlocutory appeal from a decision of the Superior Court which determined that the appellants, LaNuova D & B, S.p.A. ("LaNuova"), a manufacturer of building materials and its wholly owned subsidiary, Dibiten, S.p.A., were subject to *in personam* jurisdiction under the Delaware Long Arm Statute (10 *Del.C.* § 3104). We granted review of the interlocutory ruling because of the need to determine finally LaNuova's status as a defendant in this multi-party litigation. LaNuova contends that, as a matter of law, its activities do not bring it within the ambit of the Delaware Long Arm Statute and if the Statute is so construed it violates the due process clause of the fourteenth amendment of the United States Constitution. We conclude that the Superior Court properly applied the Long Arm Statute and, given the extent of LaNuova's Delaware contacts, the corporation's due process rights have not been compromised. Accordingly, we affirm.

I

LaNuova is an Italian corporation that manufactures a roofing material known as "Dibiten." This product is manufactured in Italy and shipped to the United States for distribution by the appellee, Bowe Company, Inc., ("Bowe") a New Jersey corporation. Bowe enjoys the exclusive right to distribute Dibiten in the eastern half of the United States by reason of a written agreement between LaNuova and Bowe dated March 16, 1981.[1] This agreement, which

---

1. Originally Bowe enjoyed national distribution rights to Dibiten. Later this arrangement was modified to permit D & B Systems, Inc. to become the exclusive distributors of Dibiten for the western half of the United States. D & B

was entered into in the State of New Jersey and recites that it is subject to New Jersey law, designates Bowe as the sole and exclusive distributor of roofing products manufactured by LaNuova. The agreement further provides that Bowe will distribute no other products except those manufactured by LaNuova and that Bowe is obligated to make certain annual minimum purchases of Dibiten.

The agreement also authorized Bowe to extend to each ultimate purchaser of Dibiten a warranty that guarantees the roofing material against defects. The product warranty extended by Bowe was secured by liability insurance which LaNuova undertook to supply in support of the warranty. Although the distributorship agreement provided that Bowe was not the agent of LaNuova "except as hereafter provided" it was contemplated by the agreement that Bowe would distribute to each purchaser of Dibiten a written warranty agreement which had been previously signed in blank by the President of LaNuova. This arrangement was intended to enhance the marketability of Dibiten products which were competing in the American market with roofing materials that bore comparable warranties.

Bowe distributed its Dibiten products in Delaware through GAF Industries which, in turn, sold the product to roofing contractors. Bowe's practice was to deliver the warranty to the ultimate purchaser—the building owner—only upon completion of the roof. At the time of the fire which led to this litigation Bowe had delivered two such warranties to two separate purchasers in Delaware. Bowe continued to deliver the warranties after the fire and apparently has done so as a matter of course throughout its entire sales territory.

The underlying litigation arose through a claim by certain tenants of the Wilmington Merchandise Mart whose premises were damaged by fire during the renovation of the shopping center. The fire is alleged to have resulted from the improper application and/or manufacture of Dibiten. The defendant contractors and suppliers, including GAF, have joined Bowe (the distributor of the product) as an additional defendant and Bowe, in turn, seeks to join LaNuova, the manufacturer of the product.

■ The Delaware Long Arm Statute in 10 *Del.C.* § 3104 provides the means by which Delaware courts may obtain personal jurisdiction over nonresidents. Although § 3104(c) lists several activities, any one of which may supply the necessary predicate for the assertion of *in personam* jurisdiction, in this case the trial court focused on the requirements outlined in subsection (c)(4).[2] That section, in effect, authorizes the assertion of jurisdiction in connection with any tort claim in which the injury occurred in the State of Delaware attributable to conduct occurring outside the State if certain other indicia of activity are established, including: (1) regular doing or solicitation of business, (2) engaging in any other persistent course of conduct, or (3) deriv-

---

Systems is owned, in part, by the son of the principal shareholder of LaNuova.

2. 10 *Del.C.* § 3104(c) provides:

(c) As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or his personal representative, who in person or through an agent:

(1) Transacts any business or performs any character of work or service in the State;

(2) Contracts to supply services or things in this State;

(3) Causes tortious injury in the State by an act or omission in this State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;

(5) Has an interest in, uses or possesses real property in the State; or

(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

ing substantial revenues from the services or products used or consumed in the State.

The Superior Court reasoned that the agreement between LaNuova and Bowe permitting the widespread distribution of LaNuova's warranty, along with its product, constituted sufficient direct or indirect contact with Delaware so as to subject LaNuova to *in personam* jurisdiction in this State. The Superior Court did not articulate the specific indicia of activity under (c)(4) upon which it posited jurisdiction, but its analysis suggests that the basis for sustaining jurisdiction arose from the appellant's persistent course of conduct. We agree with the Superior Court that the evidence in this case supports such a conclusion.

## II

■ To determine whether the Delaware courts can obtain personal jurisdiction over a nonresident, a two-step analysis is applied. First, the court must consider whether the Delaware Long Arm Statute applies, and next must evaluate whether subjecting a defendant to jurisdiction in Delaware violates the due process clause of the fourteenth amendment. *See Waters v. Deutz Corp.*, Del.Supr., 479 A.2d 273 (1984). We begin our analysis with an examination of the provisions of 10 *Del. C.* § 3104(c), as they apply to the facts of this case, recognizing that section 3104(c) has been broadly construed to confer jurisdiction to the maximum extent possible under the due process clause. *Speakman Co. v. Harper Buffing Machine Co.*, 583 F.Supp. 273 (D.Del.1984); *Moore v. Little Giant Industries, Inc.*, 513 F.Supp. 1043, 1048 (D.Del.1981) *aff'd* 681 F.2d 807 (3d Cir. 1982).

■ Although Bowe, consistent with its position in the Superior Court, contends that LaNuova's activities establish a prima facie application of *in personam* jurisdic-

tion under subsections (1) and (2) of § 3104(c), the Superior Court did not directly address those contentions and we find them without merit. The conduct embraced in subsections (1) and (2), the transaction of business or performance of work and contracting to supply services or things in the State, may supply the jurisdictional basis for suit only with respect to claims which have a nexus to the designated conduct. Where personal jurisdiction is asserted on a transactional basis, even a single transaction is sufficient if the claim has its origin in the asserted transaction. *Speakman*, 583 F.Supp. at 275; *Wilmington Supply Co. v. Worth Plumbing & Heating, Inc.*, 505 F.Supp. 777, 780 (D.Del. 1980). Thus, if the claim sought to be asserted arose from the performance of business or the discharge of the contract, no further inquiry is required concerning any other indicia of the defendant's activity in this state.

■ Similarly, where the claim is one for tortious injury under subsection (c)(3), a single "act or omission" in the State in which the injury was caused will suffice. Such a claim may also be viewed as transactional. The assertion of jurisdiction under subsection (c)(4), however, is not transactionally based in the sense that the claim asserted need not arise out of the claimed activity. In seeking to join LaNuova as a fourth-party defendant, Bowe asserts a common liability it shares with LaNuova and for which it seeks contribution. Here, the claim cannot be based on the general transactional provision in subsection (c)(1) since LaNuova enjoys no general presence in this state and when Dibiten is sold to Bowe, title passes in Italy. Furthermore, the claim clearly is not a contractual one since the warranties had not been issued at the time of the fire.[3]

---

**3.** It is conceivable that a tort claim could enjoy a dual jurisdictional basis under (c)(1) and (c)(4) if the indicia of activity set forth under (c)(4) were sufficiently extensive to reach the transactional level of (c)(1) and there was a nexus between the tort claim and transaction of business or performance of work.

In the absence of a nexus requirement, it is sufficient if the record demonstrates a prima facie basis for the existence of an included activity under (c)(4). Bowe argues that the evidence of record supports the conclusion that LaNuova both engaged in a persistent course of conduct in the State and derived substantial revenues from sales of Dibiten in Delaware. The Superior Court did not apply the substantial revenue test nor do we find it necessary to do so under the appropriate standard of review. The record clearly justifies the conclusion that LaNuova's activities in establishing and implementing an insured warranty program for its product was such a persistent course of conduct as to justify the assertion of personal jurisdiction.

The warranties, signed in blank by the president of LaNuova, may be viewed as a "presence" in this State from the moment they are delivered to Bowe with authority to deliver them to ultimate purchasers. The mere fact that only two warranties had been delivered prior to the fire which gave rise to this litigation does not reduce their significance for jurisdictional purposes. Each shipment of Dibiten by LaNuova will ultimately lead to entitlement to the consequent delivery of warranties upon installation of the material. Moreover, in order to assure the enforceability of these warranties, LaNuova has taken the additional step of providing product liability insurance with an American insurance company with the intention that claims against the use of its product arising in Delaware would be protected. This elaborate marketing device, designed to render LaNuova's products competitive with other roofing material distributed in this State, is persistent in both plan and implementation.

Nor does Bowe's role in the warranty plan reduce LaNuova's jurisdictional presence. The language of the warranty is of LaNuova's selection and Bowe has no authority to modify it. Similarly, the place-

ment of liability insurance, its terms and payment was solely the act of LaNuova.

The Superior Court was correct in concluding that Bowe has made a prima facie showing that LaNuova's warranty program was a sufficient basis upon which to posit *in personam* jurisdiction under § 3104(c)(4).

### III

The scope of our review requires that we next examine the second step of the Superior Court's jurisdictional analysis: whether, in this case, the imposition of *in personam* jurisdiction under § 3104 violates the due process clause of the fourteenth amendment. The focus of this inquiry is whether LaNuova engaged in sufficient "minimum contacts" with Delaware to require it to defend itself in the courts of this State consistent with traditional notions of fair play and justice as that standard was defined in *International Shoe Co. v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The defendant's contacts with the forum State must rise to such a level that it should "reasonably anticipate" being required to defend itself in the courts of that State. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

There is little doubt that LaNuova sought to establish a broad American market for its product. To a large extent it sought to insulate itself from direct contact with both retailers and consumers of its product through exclusive distribution agreements with domestic entities such as Bowe. To the extent that Bowe has a contractual-based grievance against LaNuova it may look to its own distribution contract, expressly made subject to New Jersey law, as the jurisdictional basis for suit. But consumer-based claims, such as the one involved here, in which Bowe seeks to require LaNuova to respond to product claims must necessarily find their jurisdictional basis in LaNuova's conduct *vis-a-vis* the ultimate customer. LaNuova had de-

liberately set out to establish that relationship through its warranty plan and enhanced the effectiveness of its warranty through securing liability insurance. LaNuova's presence is thus intentional and consumer-directed and does not arise simply because its product finds its way into this State at the behest of Bowe's sales efforts.

LaNuova's warranty program was admittedly undertaken for competitive reasons. The corporation cannot seek to capitalize on the market advantages of a direct manufacturer's insured warranty and at the same time attempt to insulate itself from suit in the very forum in which it promotes its warranty. The quality and nature of its warranty program provides the constitutionally required level of minimum contacts. *See Waters v. Deutz Corp.*, Del. Supr., 479 A.2d 273 (1984).

\* \* \* \* \* \*

We conclude that the Superior Court correctly determined that LaNuova and its subsidiary Dibiten S.p.A. were subject to *in personam* jurisdiction in this State.

AFFIRMED.

## ON MOTION FOR REARGUMENT

■ LaNuova seeks reargument with respect to this Court's characterization of the extent of Bowe's participation in the formulation of LaNuova's warranty program. LaNuova contends that the undisputed facts of record indicate that Bowe was instrumental in the securing of the liability insurance which supported LaNuova's warranty. This is a distinction without a difference.

As noted in the principal opinion the determination of jurisdiction in this case turns on the persistent course of conduct evidenced by LaNuova's warranty program. The warranties were executed solely by LaNuova whose role as warranting manufacturer is clearly enhanced by the presence of product liability insurance which LaNuova expressly incorporated in the warranty document. Only the manufacturer may give a manufacturer's war-

ranty. It is the warranty which creates the jurisdictional presence wholly apart from the question of who may have initially arranged for the liability insurance.

\* \* \*

For the foregoing reasons, LaNuova's Motion for Reargument is DENIED.