**UNITED STATES of America, Plaintiff,**

v.

**CONSOLIDATED RAIL CORPORATION; Sea–Port Services, Ltd., formerly Sealand, Ltd.; Oil Industries, Ltd.; Wayne Hawkins; Chem Clear, Inc.; Coopers Creek Chemical Corporation; Penn Fuel Gas, Inc.; Philadelphia Gas Works; Public Service Electric and Gas Company; and National Industrial Services, Inc., f/k/a Maine Coastal Service, Defendants.**

**PENN FUEL GAS, INC.; Consolidated Rail Corporation; Chem Clear, Inc.; Coopers Creek Chemical Corporation; Philadelphia Gas Works; and Public Service Electric and Gas Company, Third–Party Plaintiffs,**

v.

**WASHINGTON POST COMPANY; Affiliated Publications, Inc., d/b/a Boston Globe; Times Journal Company, f/k/a Army Times Publishing Company; United States Printing Ink Corporation; East Coast Pollution Control, Inc.; Casie Ecology Oil Salvage, Inc.; National Industrial Services, Inc., f/k/a Maine Coastal Service; Farboil Company; Peabody Clean Industries, Inc. of Massachusetts, f/k/a Coastal Services, Inc.; Eklof Marine Corp.; Timber Trucking Co., Inc.; Continental Vanguard, Inc.; Burke Parsons Bowlby Corp.; Peabody–Myers Corporation; USX Corporation f/k/a United States Steel Corp.; Koopers Company, Inc.; the Globe Newspaper Company; A.M. Lavin Machine Works, Inc.; and Robert J. Ziegler, d/b/a American Reclamation Refining Company, Third–Party Defendants.**

Civ. A. No. 85–502 MMS.

United States District Court,
D. Delaware.

Nov. 6, 1987.

Richard G. Andrews, Asst. U.S. Atty., Dept. of Justice, Wilmington, Del., of counsel: Robert R. Keuhn, Dept. of Justice, Washington D.C., for U.S.

Somers S. Price, Jr. of Potter, Anderson & Corroon, Wilmington, Del., of counsel: Abbi L. Cohen, Philadelphia, Pa., for Consolidated Rail Corp.

John Elzufon, of Elzufon & Bailey, Wilmington, Del., for Sea–Port Services, Ltd.

Wayne Hawkins, defendant pro se, Wilmington, Del.

Stephen E. Herrmann of Richards, Layton & Finger, Wilmington, Del., of counsel: Thomas W. Scott of Killian & Gephart, Harrisburg, Pa., for Chem Clear, Inc.

Henry E. Gallagher and Collins J. Seitz, Jr. of Connolly, Bove, Lodge & Hutz, Wilmington, Del., for Coopers Creek Chemical Corp.

C. Scott Reese of Cooch & Taylor, Wilmington, Del., of counsel: Robert A. Swift of Kohn, Savett, Marion & Graf, P.C., Philadelphia, Pa., for Penn Fuel Gas, Inc.

Philip D. Saxon of Duane, Morris & Hecksher, Wilmington, Del., of counsel: Tyler E. Wren of Obermayer, Rebmann, Maxwell & Hippel, Philadelphia, Pa., for Philadelphia Gas Works.

William D. Johnston of Young, Conaway, Stargatt & Taylor, Wilmington, Del., of counsel: Roger M. Nelson, Newark, N.J., for Public Service Elec. and Gas Co.

Susan C. Del Pesco of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Del., for National Industrial Services, Inc.

Barbara D. Crowell of Morris, James, Hitchens & Williams, Wilmington, Del., of counsel: John Quarles, and Janine M. Sweeney of Morgan, Lewis & Bockius, Washington, D.C., for Washington Post Co., Affiliated Publications, Inc., and The Globe Newspaper Co.

Donald E. Reid of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for Peabody Clean Industries, Inc., Times Journal Co., f/k/a Army Times Publishing Co., and Peabody–Myers Corp., of counsel for Peabody Clean Industries, Inc. and Times Journal Co.

Donald Patterson of Beverage & Diamond, Washington, D.C. of counsel, for Army Times.

Theodore L. Garret, and Keith A. Teel of Coving & Burling, Washington, D.C. of counsel, for Army Times.

Douglas B. Catts of Schmittinger & Rodriguez, P.A., Dover, Del., for U.S. Printing Ink Corp.

Raymond M. Radulski, Wilmington, Del., of counsel: Michael H. Malin of White & Williams, Philadelphia, Pa., for East Coast Pollution Control, Inc.

John C. Lager of Saul, Ewing, Remick & Saul, Wilmington, Del., of counsel: Franklin J. Riesenburger of Greenblatt & Riesenburger, P.A., Vineland, N.J., for Casie Ecology Oil Salvage, Inc.

John W. Noble of Parkowski, Noble & Guerke, Dover, Del., of counsel: Charles D. Hellman of Lowenstein, Sandler, Brochin, Kohl, Fisher, Boylan & Meanor, Roseland, N.J., for Farboil Co.

Beth H. Christman of Tybout, Redfearn, Casarino & Pell, Wilmington, Del., of counsel: Kieron Quinn, and Thomas J. Minton of Quinn, Ward & Kershaw, Baltimore, Md., for Eklof Marine Corp.

William L. Garrett, Jr. of O'Donnell & Hughes, P.A., Wilmington, Del., of counsel: Robert G. McLusky of Jackson, Kelly, Holt & O'Farrell, for Timber Trucking Co., Inc. and Burke Parsons Bowlby Corp.

Robert K. Beste, Jr. of Biggs & Battaglia, Wilmington, Del., of counsel: Frank Thatcher of Moss, Thatcher, Moss, McNeill

& Ferreri, Runnemede, N.J., for Continental Vanguard, Inc.

Roger A. Akin of Sawyer & Akin, Wilmington, Del., of counsel: Mark McNally, Pittsburgh, Pa., for USX Corp.

Richard Herrmann of Bayard, Handelman & Murdoch, Wilmington, Del., for Koopers Co., Inc.

Joseph W. Weik of Czajkowski, Weik & Knepper, Wilmington, Del., of counsel: Lewis Kates of Kates & Mozzocone, Philadelphia, Pa., for A.M. Lavin Machine Works, Inc.

Robert J. Katzenstein of Lassen, Smith, Katzenstein & Furlow, Wilmington, Del., of counsel: Robert J. Ziegler, of Pressman & Pressman, Philadelphia, Pa., for Robert J. Ziegler.

## OPINION ON THE GLOBE NEWSPAPER COMPANY'S MOTION TO DISMISS

MURRAY M. SCHWARTZ, Chief Judge.

In August 1985, plaintiff United States of America brought an action under the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601–9657 (1982), seeking reimbursement of response costs for the clean-up of hazardous wastes at the Sealand disposal site in Delaware. On August 7, 1986 Conrail and other defendants filed an amended third-party complaint adding third-party defendant The Globe Newspaper Company ("Globe") and others. The third-party plaintiffs sought indemnification and/or contribution under Section 107 of CERCLA, 42 U.S.C. § 9607 (1982), and Delaware common law. Third-party plaintiffs executed a third-party summons upon Globe on August 7, 1986 through the Secretary of State of Delaware, and subsequently notified the Court that a notice of receipt was received from Globe on August 12, 1986.

The issue now before the Court is Globe's motion to dismiss for lack of personal jurisdiction.

### I. *Factual Background*

The Boston Globe is a newspaper incorporated under the laws of the Commonwealth of Massachusetts, with its principal place of business in Massachusetts. Globe has no business facilities, employees or bank account in Delaware.

Globe, however, did generate waste ink that was transported to the Sealand site in Delaware for disposal and treatment. As part of Globe's contract with United States Printing Ink ("USPI") for the purchase of ink, USPI arranged for the disposal of Globe's waste ink. On two occasions in 1983 Globe employees signed hazardous waste manifests stating that the waste ink was destined for the Sealand facility in Delaware and that the facility had a valid permit and could accept the shipment.

In addition, Globe had business contacts with Delaware residents unrelated to the disposal of the waste ink. Globe has maintained subscriptions and advertising accounts with Delaware residents. In 1986 Globe had eleven Delaware advertising accounts which totaled 832 lines and $4,618, less than one percent of Globe's total paid advertising. Appendix to Defendant/Third–Party Plaintiff's Answering Brief, Document No. 81 [hereinafter Appendix]; *see* Henn Affidavit at ¶ 16. Globe also had sixteen mail subscriptions with Delaware addresses in 1986. Henn Affidavit at ¶ 17. In 1985, Globe had eight Delaware advertising accounts totalling $6,107 and 1,537 lines, and twenty-six Delaware subscribers. Appendix, Document No. 89; Henn Affidavit at ¶ 17. In 1984, twelve Delaware advertisers accounted for $3,284 in advertising revenue and 696 lines. Appendix, Document No. 95. In 1983, Globe's three Delaware advertisers were responsible for $1858.80 in revenue and 468 lines. *Id.* The record contains no figures for the years prior to 1983.

### II. *Jurisdiction Under CERCLA*

A threshold issue is whether at the time third-party plaintiffs brought this action under Section 107 of CERCLA, 42 U.S. C. § 9607 (1982), there was nationwide service of process. At the pertinent time that

act contained no section explicitly authorizing nationwide service of process.[1] Following the lead of other tribunals which have addressed this issue, the Court holds nationwide service of process can not be implied under CERCLA. *See Violet v. Picillo,* 613 F.Supp. 1563, 1573 (D.R.I.1985); *Wehner v. Syntex Agribusiness,* 616 F.Supp. 27, 28–29 (E.D.Mo.1985); *but see United States v. Bliss,* 108 F.R.D. 127, 136–37 (E.D.Mo.1985) (holding nationwide service of process impliedly authorized for suits brought under section 106 of CERCLA).

If there is no federal statute authorizing nationwide service of process, the district courts look to the jurisdictional statute of the state in which they sit, in accordance with Rule 4(e) of the Federal Rules of Civil Procedure. *Max Daetwyler Corp. v. R. Meyer,* 762 F.2d 290, 295 (3d Cir.), *cert. denied,* 474 U.S. 980, 106 S.Ct. 383, 88 L.Ed.2d 336 (1985). Therefore, this Court must examine jurisdiction under the Delaware long-arm statute.

### III. *Jurisdiction Under the Delaware Long–Arm Statute*

Determining jurisdiction is a two-step process. First, the Court must examine whether the Delaware long-arm statute establishes jurisdiction. If it does, the Court must decide if its assertion of jurisdiction comports with the due process guarantees of the Fourteenth Amendment of the United States Constitution. *Fischer v. Hilton,* 549 F.Supp. 389, 390 (D.Del.1982).

Third-party plaintiffs assert two bases for jurisdiction under the Delaware long-arm statute, *Del.Code Ann.* tit. 10, § 3104 (Supp.1986). Subsection (c) provides in pertinent part that:

> As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-resident, or his personal representative, who in person or through an agent:
>
> (1) Transacts any business or performs any character of work or service in the State; [or]
>
> ....
>
> ....
>
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State....

### A. *Section 3104(c)(1)*

Subsection (c)(1) provides for the exercise of transactional jurisdiction, limited to those claims with a nexus to the conduct used as the basis for jurisdiction. *LaNuova D & B, S.p.A. v. Bowe Co.,* 513 A.2d 764, 768 (Del.1986); *Speakman Co. v. Harper Buffing Machine Co.,* 583 F.Supp. 273, 275 (D.Del.1984). The language of the statute requires that some action by the defendant occur within the state. *Fischer v. Hilton,* 549 F.Supp. at 391.

Courts have scrutinized the action occurring within the state to determine if it is sufficient to support jurisdiction. In *Wilmington Supply Co. v. Worth Plumbing & Heating,* the court found that the opening of a credit account with a Delaware resident and the placement of more than 500 orders on that account fulfilled the requirements of subsection (c)(1). 505 F.Supp. 777, 780–81 (D.Del.1980). In contrast, in *Moore v. Little Giant Industries,* the court found the mere shipment of a ladder into the state insufficient when the solicitation, filing of the purchase order and payment for the ladder occurred out of the state. 513 F.Supp. 1043, 1046 (D.Del. 1981), *aff'd,* 681 F.2d 807 (3d Cir.1982). Also, the court in *Fischer* held that a phone call into the state was an inadequate basis

---

**1.** Section 113(b) of CERCLA gives original jurisdiction to the federal courts and establishes venue. 42 U.S.C. § 9613(b) (1982).

Effective October 17, 1986 Congress amended Section 113 by adding subsection (e) to provide for nationwide service of process in "any action by the United States." 42 U.S.C.A. § 9613(e) (Supp.1987). Even if subsection (e) applies to actions brought by third-party plaintiffs, this provision was not in effect when the complaint was filed and process served.

.for the exercise of jurisdiction, when the contract at issue was negotiated and executed out of the state. 549 F.Supp. at 391.

Although defendant Globe did contract with USPI for the shipment of waste and knew the waste was destined for Delaware, Globe took no action within the state of Delaware. Globe, therefore, is not subject to jurisdiction under subsection 3104(c)(1). The actions by Globe resemble those in *Little Giant,* in which the court found no jurisdiction under subsection (c)(1).[1A] The contract between Globe and USPI calling for the disposal of its waste ink was not made within Delaware. USPI arranged for a third party to dispose of the waste. The third party received the waste in Massachusetts, after which Globe had no interest in or control over the waste.

These facts distinguish Globe's activities from those of other waste generators found subject to long-arm jurisdiction in other states. In *People v. Parsons,* 122 Ill.App.3d 590, 78 Ill.Dec. 74, 82, 461 N.E. 2d 658, 666 (Ill.App.1984), the Illinois court found the parent company subject to the state's jurisdiction when the parent itself shipped the wastes to the subsidiary who acted as the parent's agent in disposing of the wastes in Illinois.[2] *But cf. Baltimore & Ohio Chicago Terminal R.R. v. Soo Line R.R.,* 646 F.Supp. 327, 334 (N.D.Ill. 1986) (jurisdiction over foreign waste generator based upon participation in plan to dispose of waste in forum state and retention of title to waste after shipment to forum state). Globe neither shipped the waste itself nor maintained any title or interest in the waste after it entered Delaware. Consequently, Globe is not subject to jurisdiction under subsection 3104(c)(1) of the Delaware Code because it took no action within the State.[3]

### B. *Section 3104(c)(4)*

Under subsection (c)(4) a court may exercise jurisdiction over a person or corporation that

[c]auses tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State.

*Del.Code Ann.* tit. 10, § 3104 (Supp.1986).

■ Initially, the Court must determine if the alleged improper disposal of hazardous wastes is a tortious injury for the purposes of jurisdiction. In *Magid,* the court, citing prior Illinois case law, stated that tortious injury was not restricted to the technical definition of a tort, but included any breach of legal duty for which the breaching party is liable in damages. 517 F.Supp. at 1130. Section 107 of CERCLA imposes liability on any person who contracts for the disposal or treatment of hazardous wastes at a facility owned by a third-party. 42 U.S.C. § 9607(a)(3) (1982). The Court concludes that the alleged improper disposal of hazardous wastes is a tortious injury for the purposes of subsection (c)(4).

■ Under subsection (c)(4), no nexus is required between the tortious injury and actions upon which jurisdiction is based.

**1A.** The court in *Little Giant* proceeded to find jurisdiction based on subsection (c)(2) of the Delaware statute. 513 F.Supp. at 1048.

**2.** Because subsection (c)(1) of the Delaware statute is based on the Illinois statute, the Court may look for guidance to the decisions concerning the Illinois statute. *Magid v. Marcal Paper Mills,* 517 F.Supp. 1125, 1129–30 (D.Del.1981).

**3.** Decisions in other jurisdictions extending personal jurisdiction over hazardous waste generators are not persuasive if the statutory language differs from the Delaware Code. The court in *Violet v. Picillo,* 613 F.Supp. at 1574, employed the Rhode Island statute giving jurisdiction over non-residents having "the necessary minimum contacts with the state." R.I.Gen. Laws § 9–5–33 (1985). Similarly the district court in *Allied Towing Corp. v. Great Eastern Petroleum Corp.,* 642 F.Supp. 1339, 1354 (E.D.Va.1986), held that in a federal question case, such as the one before it concerning a hazardous waste generator, the court was not bound by the state jurisdictional statute, but only by federal due process considerations. The Third Circuit Court of Appeals has rejected this analytic approach. *See Max Daetwyler Corp. v. R. Meyer,* 762 F.2d 290, 295–96 (3d Cir.), *cert. denied,* 474 U.S. 980, 106 S.Ct. 383, 88 L.Ed.2d 336 (1985).

*LaNuova,* 513 A.2d at 768–69; *Waters v. Deutz Corp.,* 479 A.2d 273, 275 (Del.1984). Accordingly, the Court may look to Globe's advertising and subscription accounts with Delaware residents for a jurisdictional basis.

■ Although courts have broadly interpreted the term substantial revenue, Globe's revenues fall below that required for jurisdictional purposes.[4] At most, Globe's annual revenue from Delaware residents was $6,107 in 1985, less than one percent of total advertising revenue. Appendix, Document No. 89; *see* Henn Affidavit at ¶ 16. Neither the absolute dollar amounts nor the percentage is large enough to form a basis for jurisdiction.

■ The language of the statute, however, allows a court to use either substantial revenue or a persistent course of conduct as a basis for jurisdiction. Del.Code Ann. tit. 10, § 3104(c)(4) (Supp.1986). Interpreting the Delaware statute, courts consistently have held that, even if the revenue derived is insubstantial, regular or persistent contact may be sufficient for jurisdiction. *Hill,* 562 F.Supp. at 1331; *Fischer,* 549 F.Supp. at 392; *Magid,* 517 F.Supp. at 1130; *LaNuova,* 513 A.2d at 769.

Courts have based jurisdiction under § 3104(c)(4) on the regular shipment of goods into the State along with supervision of retail sales. *Magid,* 517 F.Supp. at 1130. In *LaNuova,* the Delaware Supreme Court also held that the establishment of a warranty program designed to benefit Delaware consumers met jurisdictional requirements. 513 A.2d at 769.

For at least the past four years Globe has had advertising and subscription accounts with Delaware residents. As was conceded by counsel for Globe in oral argument on its motion to dismiss, Globe's contacts with Delaware have been regular and persistent. Because substantial revenue need not also be present, the Court finds that jurisdiction exists under subsection (c)(4) of section 3104.

IV. *Limits on Jurisdiction Under the Fourteenth Amendment Due Process Guarantees*

■ Even though Globe has sufficient contacts with Delaware to meet the requirements of section 3104(c)(4), the Court also must examine whether the assertion of jurisdiction comports with the due process guarantees of the fourteenth amendment.

Because the claim asserted by the plaintiff is unrelated to Globe's advertising and subscription contacts with Delaware, the assertion of jurisdiction under (c)(4) is general rather than specific. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 nn. 8–9, 104 S.Ct. 1868, 1872 nn. 8–9, 80 L.Ed.2d 404 (1984); *Dollar Savings Bank v. First Security Bank of Utah,* 746 F.2d 208, 211 (3d Cir.1984); *Colonial Mortgage Service v. Aerenson,* 603 F.Supp. 323, 327 (D.Del.1985). To maintain general jurisdiction over a nonresident, the facts must establish "continuous and systematic general business contacts" with the forum state. *Helicopteros,* 466 U.S. at 416, 104 S.Ct. at 1873. In addition the assertion of jurisdiction must not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940); *accord Asahi Metal Industry v. Superior Court of California,* — U.S. ——, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987).

The assertion of general jurisdiction must be closely scrutinized. *Perkins v.*

---

**4.** In interpreting the words "substantial revenue," courts have found the fact that the defendant derives only a small portion of its revenue from Delaware not to be conclusive, and have determined that two to three percent of total revenue is sufficient. *Plumb v. Cottle,* 492 F.Supp. 1330, 1334 (D.Del.1980); *see also Hill v. Equitable Trust Co.,* 562 F.Supp. 1324, 1331 (D.Del.1983) (appropriate inquiry generally is in terms of absolute dollar amounts). In *Colonial Mortgage Service v. Aerenson,* the Court found holding $130 million in Delaware mortgages sufficient. 603 F.Supp. 323, 325, 327 (D.Del. 1985). Other courts have found annual revenues of $21,000 and $50,000 to be large enough for the assertion of jurisdiction. *Plumb,* 492 F.Supp. at 1334; *Hill,* 562 F.Supp. at 1331.

*Benguet Consolidated Mining Co.*, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952), is the sole case in which the Supreme Court upheld jurisdiction based on activities unrelated to the cause of action.[5]  In *Perkins*, the company owned mining properties in the Phillipines, but during World War II the president maintained a bank account and office files and carried out his duties as president, including drawing and distributing payroll, in the forum state.  *Perkins*, 342 U.S. at 447–48, 72 S.Ct. at 419.  The Court concluded that these activities were "sufficiently substantial" to permit the forum state to assert jurisdiction over the company.  *Id.*

Two recent Supreme Court cases shed light on the narrow boundaries of *Perkins.* Noting that general jurisdiction required "continuous and systematic general business contacts" of the kind found in *Perkins,* the Court in *Helicopteros* found insufficient contacts with the forum state. 466 U.S. at 416, 418–19, 104 S.Ct. at 1873, 1874.  The defendants in *Helicopteros* negotiated a contract, made purchases and sent personnel for training in the forum state, *id.* at 416–17, 104 S.Ct. at 1873.  The *Helicopteros* contacts are much more substantial than the advertising and subscription accounts Globe maintained with Delaware residents.  The Supreme Court also has explained that the exercise of general jurisdiction requires a higher level of activity than the exercise of specific jurisdiction. *Keeton v. Hustler Magazine,* 465 U.S. 770, 779, 104 S.Ct. 1473, 1480, 79 L.Ed.2d 790 (1984).  In *Keeton,* the Court commented that while the sale of 10,000 to 15,000 magazines a month within the forum state supports the assertion of jurisdiction for a related cause of action, these activities probably were insufficient to support a claim of general jurisdiction.  *Id.* at 772–74, 104 S.Ct. at 1477–78.  In contrast, Globe had no more than twenty-six Delaware subscribers and twelve advertising accounts with Delaware residents in any one year. Henn Affidavit at ¶ 17; Appendix, Document No. 95.  The United States Courts of Appeals for the Third Circuit has reit-

erated that an assertion of general jurisdiction must be grounded in "continuous and substantial forum affiliations." *Dollar Savings Bank,* 746 F.2d at 212.

Albeit regular and continuous, Globe's contacts with Delaware do not establish a sufficiently substantial basis for the assertion of jurisdiction.  At most, Globe had eleven advertising accounts and twenty-six subscriptions with Delaware residents, and received no more than $6,107 in paid advertising in any one year.  These contacts are too minimal to allow the Court to maintain jurisdiction when the cause of action is unrelated to the forum-based activities.

Defendant Globe's motion to dismiss will be granted.

---

**5.** *See Magid,* 517 F.Supp. 1131 n. 5.